14337068   **UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO EASTERN DIVISION**

FILED

JAN 08 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| **RICHARD HENRY** | ) | **Case No.** **1:26 CV 00053** |
| **3154 WASHINGTON AVE** | ) | |
| **LORAIN OH 44052** | ) | **Judge** **JUDGE RUIZ** |
| **Plaintiff** | ) | |
| **v.** | ) | **Magistrate Judge** **MAG JUDGE GRIMES** |
| | ) | |
| **City Of Avon** | ) | |
| **36080 CHESTER RD** | ) | **COMPLAINT** |
| **AVON, OH 44011** | ) | |
| | ) | |
| **Avon Ohio Police Officer Jessica Zuk** | ) | |
| **36145 DETROIT RD** | ) | **(JURY DEMAND)** |
| **AVON OH 44011** | ) | |
| | ) | |
| **Avon Ohio Police Officer Jason Hunt** | ) | |
| **36145 DETROIT RD** | ) | |
| **AVON OH 44011** | ) | |
| | ) | |
| **Avon Ohio police Officer Alexis Dixon** | ) | |
| **36145 DETROIT RD** | ) | |
| **AVON OH 44011** | ) | |
| | ) | |

(42 U.S.C. § 1983 – Fourth & Fourteenth Amendment Violations)

INTRODUCTION

1.This is a civil action brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's Fourth and Fourteenth Amendment rights arising from an unlawful traffic investigation, unlawful search, unlawful seizure, fabrication of evidence, and malicious prosecution by Defendants City of Avon, Avon Ohio Officers Jessica Zuk, Jason Hunt, and Alexis Dixon of the Avon Ohio Police Department.

2.	Plaintiff seeks compensatory and punitive damages for the harms he suffered, including loss of employment, loss of housing, emotional distress, reputational harm, and constitutional deprivations.

JURISDICTION AND VENUE

3.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because this action arises under federal law, including 42 U.S.C. § 1983.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because all events occurred in Lorain County, within the Northern District of Ohio.

PARTIES

5.      Plaintiff Richard Thomas Henry, was and is an adult resident citizen of Lorain

County, Ohio. 3154 Washington Ave Lorain OH 44052

6.Defendant, City Of Avon  is a local government subdivision, created and existing

by virtue of the law of  Ohio. The location being 36080 CHESTER RD AVON, OH

44011, and may be served with process and other writs of this court.

7.Defendant, Jessica Zuk, ("Zuk")  Defendant Alexis Dixon ("Dixon")

Defendant Jason Hunt ("Hunt")  All adult employees of Lorain County, Ohio.

Defendant, Zuk, Dixon, and Hunt are employees of the Avon Ohio Police Department

located at 36145 Detroit Rd, Avon, OH 44011.

8.      All of the events that occurred with respects to the claims asserted in this

Complaint happened in Lorain County, Ohio.

STATUTE OF LIMITATIONS

9.      Plaintiff's claim for malicious prosecution accrued on February 4, 2025, the date the underlying criminal/traffic case — Avon Lake Municipal Court Case No. TRD 2401585 — was terminated in Plaintiff's favor.

10.      Under federal law and Wallace v. Kato, 549 U.S. 384 (2007), the statute of limitations for § 1983 malicious prosecution begins upon favorable termination. Plaintiff's complaint is timely filed well within the applicable limitations period.

11.      In Ohio under 42 U.S.C. § 1983, the statute of limitations is two years, borrowed from Ohio's general personal injury statute (Ohio Rev. Code § 2305.10)

## FACTUAL ALLEGATIONS

Plaintiff incorporates by reference all preceding paragraphs as though fully rewritten herein.

12.     On September 25, 2024, Plaintiff Richard Henry, a Black male, was present in the Best Buy parking lot in Avon, Ohio as a business invitee with his 45 lb. three-year-old daughter and a white acquaintance, Bethany Perkins. Plaintiff was approximately 400 feet away from the vehicle later referenced by Defendant Officer Jessica Zuk.

13.     The plaintiff was approached by the City Of Avon employees. Avon Ohio Police Officers Zuk, Hunt, and Dixon in the BestBuy parking lot, a privately-owned property that is held open to the public for business purposes. Avon Officers initiated contact  in relation to a trespass complaint only involving Ms. Perkins, not Plaintiff. Throughout the encounter, Plaintiff remained calm, cooperative, unarmed, and non-threatening, yet upon initial arrival, Defendant Zuk immediately directed investigatory attention toward Plaintiff. Defendant Zuk displayed disparate, hostile, and controlling behavior selectively toward Plaintiff while treating Ms. Perkins with visible leniency and courtesy. Defendant Zuk's contact with Plaintiff arose solely from a trespass complaint involving Bethany Perkins, not Plaintiff. Plaintiff was not suspected of trespass or any other offense and remained calm, cooperative, unarmed, and non-threatening throughout the encounter. From the moment officers arrived, Defendant Zuk singled out Plaintiff for command and control. While standing approximately 200 feet away, she fixed her attention on Plaintiff, angrily stared at him, pointed her finger, and forcefully ordered him not to move, despite the absence of any unlawful conduct or investigative basis to restrain him. At the same time, Defendant Zuk approached Ms. Perkins and the child present outside the vehicle in a markedly different manner. She interacted with them calmly and respectfully and greeted the child cheerfully, stating, "Hi, little girl." While Defendant Zuk treated Ms.

Perkins with courtesy and restraint, other officers moved in to question and detain Plaintiff, who remained uninvolved in the trespass investigation. This unequal treatment occurred at the outset of the encounter and reflects Defendant Zuk's selective focus on Plaintiff despite no objective facts distinguishing him from Ms. Perkins for enforcement purposes.

14.     During the initial investigation, a full identity and background check was performed on Plaintiff. The check revealed no criminal activity, and no reasonable suspicion of any offense. Plaintiff was not found to have committed any crime connected to the trespass matter.

15.     While Plaintiff remained seized during the ongoing trespass investigation, Officer Hunt continued asking Plaintiff routine, non-accusatory questions regarding the alleged trespass. During this time, Plaintiff was holding and playfully tossing his young daughter in the air, exhibiting calm and cooperative behavior and displaying no conduct suggesting that he was armed or posed any threat to officer safety. Video evidence depicts Officer Hunt engaging Plaintiff in a relaxed and conversational manner, and further shows that Officers Zuk and Dixon permitted Officer Hunt to conduct this portion of the investigation alone. While Officer Hunt continued questioning Plaintiff, Officers Zuk and Dixon separately engaged Bethany Perkins in their own investigation. Officer Zuk asked Ms. Perkins on two occasions whether there were any weapons or narcotics inside the vehicle, and Ms. Perkins responded in the negative both times. During this same period, Officer Dixon moved toward a police cruiser in preparation for detaining Ms. Perkins in connection with the alleged trespass.

16.     Immediately following the events described above, Officer Zuk redirected her attention toward Plaintiff, as shown on the body-camera video, by posing a question to Bethany Perkins that referenced Plaintiff. Officer Zuk asked Ms. Perkins, "Isn't this the guy you were with during another incident?" The question assumed facts not previously established during the encounter and referenced alleged prior involvement by Plaintiff in an unrelated matter. The inquiry occurred while Plaintiff remained seized and before any lawful basis had been articulated to expand the scope of the trespass investigation to Plaintiff.

17.     After suggesting Plaintiff's involvement in a prior incident and after twice asking Bethany Perkins whether there were any weapons or narcotics in the vehicle—both times receiving negative responses—Officer Zuk returned to her patrol vehicle. Officer Hunt then approached and quietly informed Officer Zuk that Plaintiff had stated he was outside the vehicle and had no knowledge of any criminal activity involving Ms. Perkins. Officer Zuk then sighed and questioned , "He's not privy to her criminal activity?" followed by the statement, "This situation is depressing and hurts me in the soul," then Zuk  attempts to reassure Officer Hunt by saying, "It's not you," as captured on bodycamera video. Officer Hunt responded, "I see what you're doing," smiled, and walked away. Immediately thereafter, Officer Hunt re-initiated contact with Plaintiff.

Officer Zuk remained seated in her patrol vehicle for approximately twenty-five seconds, during which she undertook no investigative activity and received no new information. Officer Zuk then exited her cruiser, interrupted Officer Hunt, and immediately began questioning Plaintiff about narcotics—despite having already confirmed twice that no weapons or illegal narcotics were present, despite Plaintiff not being implicated in any narcotics investigation, and despite a trespass inquiry was still ongoing as shown by contemporaneous video evidence, no new facts arose to justify this renewed detention or expanded inquiry.

18.    After Officer Zuk began questioning Plaintiff about narcotics, she further asked whether Plaintiff was a valid driver and whether he had driven the vehicle from Walmart to Best Buy, before again inquiring about narcotics or weapons inside the vehicle. At no point was Plaintiff informed that he was free to leave or that the trespass investigation had concluded. Instead, Plaintiff remained subject to continued police questioning and officer presence, while the actual trespass suspect, Bethany Perkins, had already been detained out of Plaintiff's view. Under these circumstances, a reasonable person in Plaintiff's position would not have felt free to decline further questioning or terminate the encounter. See Florida v. Bostick, 501 U.S. 429, 436–37 (1991); Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973); State v. Robinette, 80 Ohio St. 3d 234, 241–42 (1997) (on remand).

19.    During this continued detention, Plaintiff—confused as to the lawful basis for the repeated questioning about weapons and narcotics, and concerned about potential escalation or retaliation—responded to officers in a compliant tone. Plaintiff understood himself to be obligated to answer identifying questions under Ohio Revised Code § 2921.29 and attempted to cooperate respectfully with officers. Unaware of Officer Zuk's underlying intent and having never been advised that he could refuse or leave, Plaintiff reluctantly acquiesced when Officer Zuk sought consent to search the vehicle for weapons or narcotics. This purported consent was obtained while Plaintiff remained seized, after repeated unjustified narcotics inquiries, and without any articulable safety concern or connection to the trespass investigation. Plaintiff's consent was not voluntary, but the product of continued detention and coercive conditions, rendering any ensuing search unconstitutional.

20.    Officer Zuk then approached the vehicle, which at that time contained no child occupants, to conduct a search for weapons or narcotics—the only purpose for which

consent had been sought. Video evidence shows that immediately upon approaching the vehicle, Officer Zuk diverted from that stated purpose and remarked, "Why y'all got this car seat in this truck," while focusing her attention on a child-restraint seat located inside the vehicle. Officer Zuk proceeded to manipulate and examine the child seat, despite the absence of any child present, the vehicle being stationary, and the investigation having been limited to weapons or narcotics. This inspection bore no relation to the completed trespass investigation or the narcotics inquiry and exceeded the objectively reasonable scope of any consent given. See Florida v. Jimeno, 500 U.S. 248, 251 (1991); United States v. Ivy, 165 F.3d 397, 402–03 (6th Cir. 1998); State v. Limoli, 10th Dist. Franklin No. 11AP-924, 2012-Ohio-4502.

As shown by contemporaneous video evidence. A reasonable inference that Officer Zuk exceeded the scope of consent and used the search as a pretext to develop new probable cause unrelated to either the trespass investigation or the narcotics inquiry.

21.     As the investigation continued beyond the scope of the original trespass inquiry, Officer Zuk prolonged the detention of both the trespass suspect and Plaintiff, notwithstanding that Plaintiff was not suspected of trespass or any other offense.

22.     Officer Zuk proceeded to conduct an extensive search of the vehicle, including the dashboard area, door compartments, seating areas, and other interior spaces. Video evidence further shows Officer Zuk searching Bethany Perkins's pocket sized purse, and additional vehicle compartments, despite Ms. Perkins being the identified trespass suspect and without any express consent from her. Throughout this search, Officer Zuk did not articulate any new facts giving rise to reasonable suspicion or probable cause related to weapons or narcotics. Instead, the search expanded beyond its stated purpose and prolonged the encounter well after the trespass investigation had otherwise progressed, extending the duration of Plaintiff's detention.

23.     During this time, Officer Zuk continued searching despite the absence of any safety concern or discovery of contraband, and without intervention by Officers Hunt or Dixon.
The search did not yield any weapons or narcotics associated with Plaintiff.

Nevertheless, Officer Zuk persisted, manipulating and repositioning the child-restraint seat, examining its condition, and searching underneath and around it. As shown by contemporaneous video evidence, Officer Zuk questioned Plaintiff repeatedly during the search, using statements such as "Is this yours, buddy," further demonstrating that the investigation had shifted focus to Plaintiff rather than the trespass suspect.

24.    The child-restraint seat was not in use, the vehicle was parked on private property, and no child was being transported. Despite these undisputed facts, Officer Zuk examined and altered the position of the restraint equipment before articulating any lawful basis for a child-restraint inquiry. This conduct occurred after the narcotics search had failed to produce any evidence and supports a reasonable inference that Officer Zuk continued searching in an effort to identify an alternative basis for enforcement unrelated to the original purpose of the search. After concluding the vehicle search without discovering any weapons or narcotics, Officer Zuk then disengaged from Plaintiff and returned to continue the trespass investigation involving Ms. Perkins.

25.    After repeatedly questioning Plaintiff, treating Plaintiff as the focus of suspicion, and conducting a search of the vehicle, Officer Zuk shifted her attention to the trespass suspect, Bethany Perkins, who was seated inside a police cruiser. Body-camera video shows Officer Zuk addressing Ms. Perkins in a cordial manner and asking, "Would you like the air on?" Officer Zuk then proceeded to ask Ms. Perkins—multiple times— whether there were any weapons or illegal drugs in the vehicle. At the time these questions were posed, Officer Zuk had already searched the vehicle and had not located any weapons or narcotics. Ms. Perkins was not informed that a search had already been conducted and remained seated in the cruiser during the questioning.

Under these circumstances, Ms. Perkins did not appear free to leave or decline further interaction. Following Ms. Perkins's response, Officer Zuk walked away from the cruiser and was subsequently approached by Officer Hunt.

26.    Body-camera video captures Officer Zuk stating to Officer Hunt, in an animated tone, "This guys getting a child-restraint ticket for having an unbuckled carseat in a truck." At the time of this statement, no child was present in the vehicle, no childrestraint violation had been articulated, and no facts supporting such a violation had been

identified. Despite receiving training on traffic enforcement and the proper exercise of investigative discretion, including recognizing when intervention is appropriate, Officer Hunt took no action to intervene or to question the basis for Officer Zuk's stated intent.

27.     Officers Zuk and Hunt did not disclose this newly asserted basis for enforcement to Plaintiff. Instead, they continued to present the encounter as limited to the weaponsand-narcotics inquiry and, to the extent applicable, the trespass investigation. As shown by video evidence, Plaintiff remained detained while the officers withheld the asserted child-restraint rationale and continued the encounter under pretextual grounds unrelated to any observed or articulated violation.

28.     After receiving a second response indicating consent to search, Officer Zuk resumed searching the vehicle, including personal items belonging to Bethany Perkins, with continued focus on locating weapons or illegal drugs. The search did not yield any contraband. The only item identified was prescription medication belonging to Ms. Perkins, which Ms. Perkins had previously disclosed to officers as lawfully prescribed. Officer Zuk thereafter concluded the search.

29.     Despite having determined that the medication did not belong to Plaintiff, Officer Zuk continued to question Plaintiff about the medication while issuing the traffic citation, asking, "What's this orange pill?" and "Who does the pill belong to?" Body-camera video captures Plaintiff's young child responding, "That's mommy's." Officer Zuk nevertheless continued examining Ms. Perkins's purse and medication containers in an apparent effort to locate unlawful medication. After failing to identify any illegal substances,

Officer Zuk attempted to attribute the medication to Plaintiff by stating, "She said it was both you guys or something," before completing issuance of the citation.

30.     Ms. Perkins was detained for the trespass offense. Plaintiff then requested permission to enter Best Buy with his daughter to use the restroom. Defendant "Dixon" and "Hunt"    allowed Plaintiff to do so only after requiring him to be frisked and patted down, despite having no reasonable suspicion that Plaintiff was armed or dangerous. Plaintiff entered the store, used the restroom with his daughter, and returned shortly afterward intending to drop his daughter off with her babysitter and resume employment duties.

31.     Despite the trespass investigation having fully concluded, and without any reasonable suspicion, probable cause, or lawful justification, Defendant Zuk reinitiated contact with Plaintiff and instructed him to "give me five minutes."

32.     Defendant Zuk then improperly expanded the closed encounter into a second, unrelated detention, initiating a traffic-based investigation under Avon Ordinance § 438.28 and Ohio Revised Code § 4511.81, alleging a "child-restraint violation" even though:

- The vehicle was parked,

- Plaintiff was outside the vehicle,

- Plaintiff's daughter was outside the vehicle, and ● No traffic movement occurred.

- Video evidence confirms these facts.

33.     Ohio law expressly prohibits initiating or prolonging a stop solely to investigate childrestraint violations. See R.C. 4511.81(E). Defendant Zuk disregarded this statutory limitation.

34.     Defendant Zuk falsely stated to Plaintiff that it was illegal to have a child safety seat in the front seat of a three-seat pickup truck, a statement that is not supported by any Ohio law or Avon ordinance. Defendant Zuk further raised her hands in confusion and stuttered while making this claim, demonstrating that she was inventing a legal basis for further detention.

35.     Defendant Zuk issued Plaintiff a citation containing a fabricated identity—that of "Michael Paul Hessler," a different person with a different race, and residential address—none of whom were present. The citation falsely listed Plaintiff as this other person.

36.     Defendant Zuk compounded the fabrication by submitting with supervisor approval a report falsely claiming she witnessed Plaintiff exit the vehicle with his child, which was flatly contradicted by video evidence.

37.     Defendant Zuk's actions constituted fabrication of both facts and law to manufacture a false basis for detaining, investigating, and citing Plaintiff, in violation of established constitutional law, including Jackson v. City of Cleveland and King v. Harwood.

38.     Defendant Zuk targeted Plaintiff, a Black male, for fabricated enforcement while completely ignoring Ms. Perkins, a similarly situated white individual who was present

with the child, had equal access to the vehicle, and whose conduct would have been identical had a violation actually occurred. This constitutes disparate treatment and racial discrimination.

39.     Bethany Perkins, a white female civilian and the subject of the original trespass investigation, directly witnessed Defendant Officer Jessica Zuk's disparate and racially discriminatory treatment of Plaintiff on September 25, 2024, prior to Ms. Perkins's arrest and removal from the scene. Ms. Perkins observed that Defendant Zuk treated her—a white suspect—with courtesy, patience, and leniency, while simultaneously displaying hostility, aggression, and controlling behavior toward Plaintiff, a Black male who was not a suspect in the trespass investigation. Ms. Perkins further observed Defendant Zuk directing heightened scrutiny and accusatory focus toward Plaintiff despite the absence of any criminal suspicion, while refraining from similar conduct toward Ms. Perkins under materially identical circumstances.

40.     Defendant Zuk was a K-9 officer bound by elevated professionalism and accuracy requirements, including weekly training under Ohio Administrative Code 109:2-7-03. Her deviation from these standards further demonstrates improper motive, bias, and reckless disregard for constitutional obligations. Defendant Zuk instructed Plaintiff that if she saw him driving the truck with the child could result in child neglect. Despite having no lawful basis to issue such a claim. This demonstrated an intent to continue unlawful enforcement against him without lawful justification.

41.     At the February 2025 bench trial in Avon Lake Municipal Court, which ultimately terminated in Plaintiff's favor, Defendant Zuk presented to the court as purported evidence an entirely different traffic citation than the one she physically issued to Plaintiff during the September 25, 2024 incident. Specifically, Defendant Zuk introduced an electronically filed traffic ticket bearing Plaintiff's name and information, even though contemporaneous body worn camera and video evidence conclusively establish that the electronic citation presented at trial was not the ticket issued to Plaintiff at the scene.

42.     This substitution of a different citation constituted further fabrication and manipulation of evidence, was material to the prosecution, and was undertaken to conceal the original defective and facially invalid citation issued during the encounter.

43. Plaintiff was prosecuted in Avon Lake Municipal Court under Case No. TRD 2401585. On February 4, 2025, the court ruled that the State failed to meet their burden of proof, dismissed the case, and entered judgment in Plaintiff's favor—constituting favorable termination under Thompson v. Clark, 596 U.S. ___ (2022).

44. As a direct result of Defendant Zuk's fabricated citation, false statements, racial discrimination, and malicious prosecution, Plaintiff suffered: • Termination of employment on October 1, 2024,

- Termination of employment contracts on September 30th 2024
- Loss of rented home on November 1st 2024
- Loss of a home purchase approval scheduled to close,
- Economic losses exceeding $745,000,
- Reputational harm, • Emotional distress,
- Humiliation, and
- Prolonged legal jeopardy without probable cause.

45. These injuries were the foreseeable and direct result of Defendant Zuk's unconstitutional actions and the City of Avon's failure to train, supervise, and discipline officers—particularly K-9 officers—consistent with state standards and constitutional requirements.

# CAUSES OF ACTION

COUNT 1 — FOURTH AMENDMENT VIOLATIONS

(Unlawful Seizure, Prolonged Detention, and Unlawful Search) (42 U.S.C. § 1983)

*Against Avon Ohio Officer Zuk*

46.Plaintiff incorporates by reference all preceding paragraphs as though fully rewritten herein.

47.Defendant Officer Jessica Zuk, acting under color of state law, unlawfully seized and detained Plaintiff without reasonable suspicion or probable cause, in violation of the Fourth Amendment. Terry v. Ohio, 392 U.S. 1 (1968). No specific, articulable facts existed to justify initiating, re-initiating, or extending any investigative detention.

48.After the trespass investigation concluded and Plaintiff was lawfully permitted to leave, Defendant Zuk re-initiated contact and prolonged the encounter without lawful justification—thereby converting a completed matter into a second seizure unsupported

by any independent reasonable suspicion. Rodriguez v. United States, 575 U.S. 348, 354–57 (2015) (a stop may not be prolonged beyond its mission absent independent reasonable suspicion).

49. Plaintiff was not the subject of the trespass investigation and was not charged with or connected to it. Any arguable basis for police inquiry toward Plaintiff dissipated before Defendant Zuk expanded the encounter into a traffic-based investigation. When the justification for police presence or an initial investigative purpose has resolved or disappeared, officers lack constitutional authority to prolong the encounter or initiate a new investigation absent independent reasonable suspicion or probable cause. State v. Mathis, 2024-Ohio-5707.

50. Defendant Zuk's asserted basis for continuing the seizure—an alleged child-restraint violation—was legally unenforceable as the sole ground for detention under Ohio law. Ohio Rev. Code § 4511.81€ expressly prohibits officers from stopping or detaining a motorist for the sole purpose of determining whether a child-restraint violation occurred and forbids enforcement based solely on visual inspection absent another, independent violation.

51. Defendant Zuk nevertheless fabricated and pursued a child-restraint violation as the sole asserted basis for continued seizure, despite video-confirmed circumstances showing the vehicle was parked and Plaintiff and the child were outside the vehicle, with no traffic movement and no underlying primary violation.

52. At all relevant times, Plaintiff was cooperative, calm, unarmed, non-threatening, and holding his three-year-old child. Plaintiff committed no traffic violation and no criminal offense and made no furtive movements or gestures that could reasonably suggest he was armed or dangerous.

53. Defendant Zuk also violated the Fourth Amendment by conducting (or initiating and completing) an investigatory examination of Plaintiff's unoccupied, lawfully parked vehicle without a warrant and without preexisting probable cause, for the purpose of manufacturing probable cause for a moving child-restraint violation.

54. A warrantless vehicle search is lawful only if probable cause exists before the search begins, not if probable cause is developed through the search itself. Carroll v. United States, 267 U.S. 132, 153–54 (1925). When the vehicle is lawfully parked and poses no traffic or public-safety hazard, police lack authority to seize, impound, or conduct a warrantless "inventory" or investigative search absent a valid exception. State v. Leak, 145 Ohio St. 3d 165, 2016-Ohio-154.

55. Officer Zuk lacked probable cause as a matter of law because the facts known to her could not support a reasonable belief that a moving violation was being committed. Ohio law defines "moving violation" as a violation regulating the operation of vehicles

and excludes violations related to the parking of vehicles. R.C. 3937.43(2). Under Brinegar v. United States, 338 U.S. 160, 175–76 (1949), probable cause exists only when the facts and circumstances within the officer's knowledge would warrant a person of reasonable caution in believing an offense is being committed. Because the vehicle was parked and unoccupied, no reasonable officer could conclude probable cause existed to investigate or issue a moving traffic violation.

56.     Defendant Zuk's search and search-related escalation were also constitutionally tainted because they flowed from an unlawfully prolonged encounter. Rodriguez, 575 U.S. at 354–57; United States v. Everett, 601 F.3d 484, 494 (6th Cir. 2010). Warrantless searches without probable cause or a valid exception violate clearly established law. Mapp v. Ohio, 367 U.S. 643 (1961).

57.Defendant Zuk further lacked individualized, articulable facts establishing that Plaintiff exercised care, custody, or control over the child-restraint system she investigated, particularly where a similarly situated individual (Bethany Perkins) was present. Mere presence or association—where another person is equally situated— cannot establish constructive possession or justify investigative attribution based on speculation. State v. Haynes, 2022-Ohio-4473. Absent specific facts distinguishing Plaintiff from the similarly situated individual and demonstrating knowing dominion or control, Defendant Zuk lacked reasonable suspicion or probable cause, rendering the seizure and search unlawful.

58. Under Ohio law, unlawfully extending a routine stop beyond the time necessary to complete its mission—without new reasonable suspicion—renders a subsequent search unlawful. State v. Byrd, 2022-Ohio-4631. Likewise, where an officer does not clearly terminate the original detention and instead seamlessly pivots into further investigation, any purported consent is not voluntary under the totality of the circumstances. State v. Robinette, 80 Ohio St. 3d 234, 241–42 (1997) (on remand). Here, Defendant Zuk reinitiated and extended a completed encounter, did not clearly communicate that Plaintiff was free to leave, and escalated into investigatory and search-related conduct under

the guise of traffic enforcement—rendering any claimed consent or derivative search unlawful.

59.Defendant Zuk's conduct further reflects the type of fabricated or exaggerated justification that cannot lawfully extend a stop or support investigatory expansion. Lea v. Conrad, No. 3:19-cv-419, 2022 WL 4244215, at *12–15 (W.D. Ky. Sept. 14, 2022).

60. Defendant Zuk's Fourth Amendment violations did not end at the scene. From September 25, 2024 until dismissal on February 4, 2025, Plaintiff remained subject to a continuing Fourth Amendment seizure, including mandatory court appearances, ongoing prosecution, restrictions on liberty, and the threat of arrest and punishment.

Defendant Zuk prolonged that seizure by presenting at trial an electronically filed citation different from the ticket issued at the scene and falsely attributing it to Plaintiff despite video evidence disproving its authenticity. This post-issuance fabrication directly contributed to the continuation of Plaintiff's seizure and prosecution without probable cause. Jackson v. City of Cleveland, 925 F.3d 793, 836–38 (6th Cir. 2019); Mills v. Barnard, 869 F.3d 473, 480–82 (6th Cir. 2017); Sykes v. Anderson, 625 F.3d 294, 308–10 (6th Cir. 2010).

61. Defendant Zuk's actions violated clearly established Fourth Amendment principles prohibiting: (a) detentions without reasonable suspicion; (b) prolonging a detention beyond its mission without lawful cause; (c) fabricating a basis for investigatory expansion; (d) initiating frisk/safety measures absent objective, particularized facts showing dangerousness; and € initiating a warrantless vehicle search without preexisting probable cause or a valid exception.

62. Because no reasonable officer could believe the detention, investigative expansion, or vehicle search were lawful under the authorities cited above, Defendant Zuk is not entitled to qualified immunity.

63. Defendant Zuk's conduct violated clearly established Fourth Amendment law, and no reasonable officer in her position could have believed her actions were lawful. Long before September 25, 2024, it was clearly established that an officer may not initiate, reinitiate, or prolong a detention absent independent reasonable suspicion, Terry v. Ohio, 392 U.S. 1, 21–22 (1968), nor extend a completed encounter beyond its original mission to pursue unrelated investigation, Rodriguez v. United States, 575 U.S. 348, 354–57 (2015). Ohio law further made unmistakably clear that officers may not detain a motorist solely to investigate a child-restraint violation, nor rely on visual inspection alone absent an independent offense, Ohio Rev. Code § 4511.81. Where, as here, the vehicle was parked and unoccupied, no moving violation could occur as a matter of law, R.C. 3937.43(2), and probable cause was therefore impossible under Brinegar v. United States, 338 U.S. 160, 175–76 (1949). It was likewise clearly established that officers lack authority to prolong or revive an encounter once the original justification has dissipated, State v. Mathis, 2024-Ohio-5707, and that unlawfully extending a stop taints any ensuing search or investigative escalation, State v. Byrd, 2022-Ohio-4631; State v. Robinette, 80 Ohio St. 3d 234, 241–42 (1997) (on remand). Finally, it was clearly established that officers may not fabricate or misrepresent evidence to justify detention or prosecution, nor prolong a seizure through post-issuance falsification, Jackson v. City of Cleveland, 925 F 3d 793, 836–38 (6th Cir. 2019); Mills v. Barnard, 869 F.3d 473, 480–82 (6th Cir. 2017); Sykes v. Anderson, 625 F.3d 294, 308–10 (6th Cir. 2010). Because Defendant Zuk's conduct—re-initiating a completed encounter, fabricating an unenforceable traffic violation, escalating into investigatory and search-related activity without

lawful justification, and advancing false evidence to prolong prosecution—fell squarely within conduct long prohibited by clearly established law, qualified immunity is unavailable, and dismissal under Rule 12(b)(6) is unwarranted.

64. As a direct and proximate result of Defendant Zuk's unconstitutional seizure, prolongation, and search, Plaintiff suffered damages including loss of employment, denial of a home purchase, emotional distress, reputational harm, economic losses, and other injuries described in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendant Zuk for compensatory damages, punitive damages, declaratory relief, attorneys' fees under 42 U.S.C. § 1988, costs, and all other relief this Court deems just and proper.

Count 2- 42 U.S.C. § 1983 — FOURTH AMENDMENT (UNLAWFUL FRISK)

*Against Defendants Officer Alexis Dixon and Officer Jason Hunt*

65. Plaintiff incorporates by reference all preceding paragraphs as if fully rewritten herein.

At all relevant times, Defendants Officer Alexis Dixon and Officer Jason Hunt were sworn law enforcement officers employed by the Avon Police Department, acting under color of state law.

66. On or about September 25, 2024, Plaintiff was lawfully present and was not suspected of committing any crime, traffic offense, or ordinance violation.

Plaintiff was not under arrest, had committed no violent offense, and exhibited no behavior suggesting he was armed or dangerous.

67. Despite the absence of any reasonable suspicion or lawful basis, Defendants Dixon and Hunt conducted a warrantless pat-down (frisk) of Plaintiff's person.

68. The pat-down was not incident to a lawful arrest, was not supported by reasonable suspicion that Plaintiff was armed and dangerous, and was not justified by officer safety concerns.

69. At the time of the frisk, there were no articulable facts that would lead a reasonable officer to believe Plaintiff posed a threat or was carrying a weapon.

Defendants Dixon and Hunt knew or should have known that conducting a frisk without reasonable suspicion violated clearly established Fourth Amendment law.

70. The unlawful frisk constituted an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution.

71. As a direct and proximate result of Defendants Dixon's and Hunt's actions, Plaintiff suffered loss of liberty, humiliation, emotional distress, and other compensable injuries.

72. The constitutional right to be free from a warrantless frisk absent reasonable suspicion was clearly established at the time of the incident, and no reasonable officer could believe Defendants' conduct was lawful. See Sibron v. New York (1968), Terry v. Ohio (1968),

73. Accordingly, Defendants Dixon and Hunt are not entitled to qualified immunity.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants Officer Alexis Dixon and Officer Jason Hunt, award compensatory damages, costs, attorney's fees pursuant to 42 U.S.C. § 1988, and grant such further relief as the Court deems just and proper.

COUNT 3— Malicious Prosecution (§ 1983) Fourth Amendment —

*Against Defendant Officer Jessica Zuk*

74.Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully rewritten herein.

75.  The Fourth Amendment prohibits the initiation or continuation of criminal proceedings without probable cause, including prosecutions caused or prolonged by fabricated evidence.

76.  Initiation and Continuation of Criminal Proceedings

Defendant Officer Jessica Zuk initiated criminal and traffic proceedings against Plaintiff by issuing a moving traffic citation despite the vehicle being lawfully parked and unoccupied, and by submitting official reports that falsely alleged a child-restraint violation and materially misrepresented the facts.

77.  Defendant Zuk's actions were the proximate cause of Plaintiff's prosecution because prosecutors and the Avon Lake Municipal Court relied on her fabricated

statements, false citation, and altered documentation to initiate and continue criminal proceedings against Plaintiff, in violation of clearly established constitutional law. See Miller v. Pate, 386 U.S. 1, 7 (1967); Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000).

78. As a result of the prosecution, Plaintiff was subjected to a continuing Fourth Amendment seizure, including mandatory court appearances, ongoing criminal proceedings, restrictions on liberty, and the persistent threat of arrest and punishment, which constitute a seizure as a matter of law. See Black v. Montgomery County, 835 F.3d 358, 367–68 (3d Cir. 2016).

79. B. Lack of Probable Cause

-No probable cause existed to initiate a new, or detour original investigation into a childrestraint violation.

Throughout the entire duration of the trespass investigation, Plaintiff, Plaintiff's child, and the alleged trespass suspect, Bethany Perkins, were all outside the vehicle, and the vehicle was stationary and unoccupied.

80. Under the totality of the circumstances known to Defendant Zuk at the time, no reasonable suspicion or probable cause existed to initiate or divert the encounter into a child-restraint investigation. State v. Bobo, 37 Ohio St. 3d 177, 179 (1988); State v. Freeman, 64 Ohio St. 2d 291, 295 (1980).

81. The vehicle was parked and unoccupied, Plaintiff and the child were outside the vehicle, and no traffic offense or criminal activity had been observed. Ohio Rev. Code § 4511.81€ expressly prohibits child-restraint enforcement based solely on visual inspection absent another violation.

82. Defendant Zuk, a trained K-9 officer with formal instruction in traffic law, knew or should have known that no child-restraint violation was legally possible under these circumstances. Because no objective, articulable facts supported the investigation, the initiation of the child-restraint inquiry was unconstitutional under clearly established Fourth Amendment law.

83. "Mission" of the Detention- an officer's authority to seize an individual ends once the
specific tasks required to resolve the original mission.
See Rodriguez v. United States (2015)

"De minimus" Extension -officers may not extend a stop "for any period of time, no matter how brief," to conduct unrelated investigations. Rodriguez v. United States (2015)

84. "Detour" Unconstitutional – investigating the car seat for probable cause to a child restraint violation required adding time to the detention. It becomes an unconstitutional "detour" See United States v. Frazier (10th Cir. 2022)

85. Malicious Prosecution — Lack of Probable Cause and Malice Established by Officer's Own Admissions and Video Evidence

The record establishes that the prosecution of Plaintiff was initiated without probable cause and with malice. Officer Zuk expressly admitted that the citation was not based on any observed traffic offense, but rather on Plaintiff's alleged acknowledgment—elicited during a non-traffic encounter—that he had driven to the location earlier. Specifically, Officer Zuk stated: "I asked if you were the driver and if you drove here earlier you said you were the driver and you drove here, so I'm issuing you this citation." This admission confirms that Officer Zuk lacked contemporaneous observation of any traffic violation and instead relied on a retrospective statement obtained after the trespass investigation had concluded.

86. Video evidence corroborates this sequence, showing that the original encounter had ended, no new facts emerged, and no driving conduct was observed before Officer Zuk re-initiated contact and issued the citation. The video further confirms that the questioning leading to the citation occurred only after Officer Zuk expressed dissatisfaction with the outcome of the initial investigation and deliberately re-engaged Plaintiff without legal justification.

87. This conduct demonstrates not a good-faith enforcement decision, but a post hoc effort to manufacture probable cause and salvage enforcement authority after lawful grounds had dissipated. Misuse of a compelled response during a non-criminal inquiry to justify prosecution exceeds the scope of lawful policing and violates clearly established Fourth Amendment principles. A reasonable jury could conclude that Officer Zuk knowingly initiated the prosecution for a purpose other than bringing Plaintiff to justice—namely, to justify continued detention and enforcement following a failed investigation. Under Sixth Circuit precedent, such conduct supports an inference of malice, particularly where, as here, the officer's own words and contemporaneous video evidence establish that the prosecution depended entirely on her narrative rather than objective facts. See Sykes v. Anderson, 625 F.3d 294, 310 (6th Cir. 2010); Mills v. Barnard, 869 F.3d 473, 481–82 (6th Cir. 2017). Accordingly, Plaintiff has established the absence of probable cause and the presence of malice as a matter of law, precluding summary judgment on his malicious-prosecution claim.

88. -No probable cause existed to believe that Plaintiff alone committed any violation.

No probable cause existed to initiate or maintain criminal proceedings against Plaintiff because the alleged offense—a child-restraint violation—could not have occurred as a matter of law and, in any event, could not be attributed to Plaintiff individually. Probable cause exists only where the facts within an officer's knowledge would warrant a prudent person to believe that the specific defendant committed the specific offense charged. Brinegar v. United States, 338 U.S. 160, 175–76 (1949); Madero v. McGuinness (7th Cir. 2024). Here, the undisputed circumstances foreclosed probable cause entirely:

89. The vehicle was parked and unoccupied; Plaintiff was outside the vehicle; Plaintiff's child was outside the vehicle; and no transportation or vehicle operation occurred. Ohio law expressly limits child-restraint violations to circumstances in which a child "is being transported in a motor vehicle," and "moving violations" to conduct regulating the operation of vehicles. Where a statute's language is plain, it must be applied as written. State ex rel. Morris v. Indus. Comm., 134 Ohio St. 380, 381–82 (1938).

90. Even assuming arguendo that investigation were permissible, no facts supported singling out Plaintiff as the responsible party. Another adult—Bethany Perkins—was present, equally situated, and had equal access to the vehicle and child-restraint system. Mere presence or association, particularly where others are equally situated, does not establish dominion, control, or individual responsibility and cannot supply probable cause. State v. Haynes, 2022-Ohio-4473.

91. Under Maryland v. Pringle, 540 U.S. 366 (2003), law enforcement may infer shared responsibility among vehicle occupants only when objective facts establish the existence of a common criminal enterprise. In this case, Officer Zuk claimed that a childrestraint violation had occurred while multiple individuals were present. If such a violation had in fact occurred, Pringle would require that responsibility be assessed equally among those allegedly involved.

92. An officer may not rely on speculation, post hoc inference, or hindsight to attribute criminal responsibility to one person where the evidence does not distinguish that person from others present. People v. Lozano (2023); United States v. Hughes, 606 F.3d 311, 317 (6th Cir. 2010).

93. Rather than terminate enforcement, Defendant Zuk allegedly fabricated both facts and law—asserting a nonexistent prohibition against a front-seat child restraint and falsely claiming she observed Plaintiff exit the vehicle with a child, statements contradicted by video evidence—and then relied on those falsehoods to initiate and sustain prosecution. When charges are wholly fabricated or legally impossible, malice may be inferred and the absence of probable cause is established as a matter of law. Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010).

94. Because no reasonable officer could conclude that Plaintiff alone committed a childrestraint violation under these circumstances, Defendant Zuk lacked probable cause at every stage of the proceeding, satisfying a core element of Plaintiff's malicious prosecution claim.

95. -No Probable Cause for Initiation of Prosecution

Probable cause to initiate a moving traffic prosecution cannot exist where the undisputed facts establish that the vehicle was parked, unoccupied, and not being operated, and where no child was being transported at the time of the alleged offense.

Ohio Rev. Code § 4511.81(A) applies only "[w]hen any child … is being transported in a motor vehicle," and by its plain language presupposes both vehicle operation and the child's presence in the vehicle.

96. Likewise, Ohio law defines a "moving violation" as conduct regulating the operation of a vehicle, R.C. § 4510.01€, and defines a "vehicle" as a device by which persons or property may be transported, R.C. § 4511.01(A)—terms that cannot reasonably be stretched to encompass a parked, unoccupied car.

Under Ohio's plain-meaning doctrine, courts must apply these statutes as written and may not rewrite or expand them through interpretation. State ex rel. Morris v. Indus. Comm., 134 Ohio St. 380, 381–82 (1938); In re Application of Black Fork Wind Energy, L.L.C., 156 Ohio St.3d 181, 2018-Ohio-5206, ¶ 21.

97. Consistent with this framework traffic enforcement jurisprudence uniformly contemplates observation of a violation occurring while a vehicle is in operation. Whren v. United States, 517 U.S. 806 (1996); Kansas v. Glover, 589 U.S. 376 (2020).

98. Here, Officer Zuk visually inspected a child-restraint system during an unrelated trespass detention absent of child. Zuk retroactively attempted to manufacture probable cause for a moving violation despite knowing the vehicle was already parked, Plaintiff was no longer driving, and Plaintiff's child was outside the vehicle and not being transported.

99. Such after-the-fact justification is constitutionally impermissible. United States v. Hughes, 606 F.3d 311, 318 (6th Cir. 2010); People v. Lozano, 2023 WL ___ (Cal. Ct. App. 2023). Because no reasonable officer could believe that a child-restraint offense— or any moving violation—had been or was being committed under these circumstances, probable cause was wholly absent as a matter of law, and the prosecution initiated on that basis was constitutionally defective.

100. No probable cause existed to continue proceedings against Plaintiff.

No probable cause existed to initiate or continue criminal or traffic proceedings against Plaintiff, and Defendant Zuk's involvement extended well beyond any initial encounter. Recent appellate authority confirms that a malicious-prosecution claim lies where an officer's participation in bringing or sustaining charges "lasted beyond the arrest itself," including by supplying false information, maintaining fabricated charges, or allowing baseless proceedings to continue. See Third Circuit Standards (2024). Probable cause requires "reasonable grounds"—facts within the officer's knowledge sufficient to warrant a prudent person in believing the suspect committed the specific offense charged. Madero v. McGuinness (7th Cir. 2024). Where charges rest on "entirely illogical" theories or falsified evidence, those reasonable grounds are absent as a matter of law.

101. Here, the alleged offense—a child-restraint violation—could not have occurred under any lawful construction of the statute because the vehicle was parked, Plaintiff was outside the vehicle, Plaintiff's child was outside the vehicle, and no vehicle movement occurred. Despite this legal impossibility, Defendant Zuk fabricated a factual and legal basis to sustain prosecution by inventing a nonexistent rule prohibiting a child seat in the front seat of a pickup truck and by falsely asserting that she observed Plaintiff exit the vehicle with a child—assertions directly contradicted by video evidence. Defendant Zuk further perpetuated the prosecution by submitting and standing by these false statements, including under oath, thereby ensuring the continuation of proceedings that lacked any lawful foundation.

102. When an officer initiates or maintains a wholly fabricated charge intended to cause harm, malice may be inferred and liability attaches for the entire proceeding. Grider v. City of Auburn, 618 F.3d 1240, 1257–58 (11th Cir. 2010). Because Defendant Zuk knowingly relied on fabricated facts and an offense that could not occur as a matter of law, no reasonable officer could believe probable cause existed at any stage of the prosecution. Defendant Zuk's continued involvement—through false reports, sworn testimony, and evidentiary misrepresentations—was the proximate cause of Plaintiff's ongoing prosecution and continuing seizure, satisfying the probable-cause and malice elements of malicious prosecution under clearly established law.

103. C. Fabrication of Evidence (King, Franks, Mills)

Defendant Zuk knowingly fabricated evidence and made false statements material to the existence of probable cause, in violation of Franks v. Delaware, 438 U.S. 154 (1978).

The Sixth Circuit has long held that an officer violates the Fourth Amendment when she knowingly fabricates or materially misrepresents evidence used to initiate or continue criminal proceedings. King v. Harwood, 852 F.3d 568, 580–82 (6th Cir. 2017).

104. Defendant Zuk's fabrication was not incidental or negligent. It included: falsely claiming she witnessed Plaintiff exiting the vehicle; inventing a nonexistent child-restraint prohibition;

entering fabricated identifying information on the citation, including the name "Michael Paul Hessler," with mismatched race, height, and address; submitting reports containing false narratives contradicted by objective evidence.

105. Such conduct independently establishes malicious prosecution liability under § 1983. Mills v. Barnard, 869 F.3d 473, 481–82 (6th Cir. 2017).

D. Post-Issuance Fabrication and Trial-Stage Misconduct

Defendant Zuk's fabrication did not end with the issuance of the citation.

At the February 2025 trial, Defendant Zuk presented to the court an entirely different electronic citation—containing Plaintiff's correct information—that was not the ticket issued to Plaintiff on September 25, 2024, despite video evidence proving the original citation contained fabricated identifying information.

106. By substituting fabricated evidence at trial to sustain the prosecution, Defendant Zuk knowingly prolonged criminal proceedings without probable cause.

The Sixth Circuit holds that officers are liable where fabricated or misleading evidence foreseeably causes continued prosecution. Mills, 869 F.3d at 481–82; Sykes v. Anderson, 625 F.3d 294, 308–10 (6th Cir. 2010).

107. E. Favorable Termination (Thompson v. Clark)

On February 4, 2025, the Avon Lake Municipal Court terminated the prosecution in Plaintiff's favor, finding no probable cause and insufficient evidence.

Under Thompson v. Clark, 596 U.S. ___, 142 S. Ct. 1332 (2022), Plaintiff is not required to show affirmative evidence of innocence; it is sufficient that the prosecution ended without a conviction.

The dismissal of charges against Plaintiff constitutes favorable termination as a matter of law.

108. F. Malice and Intent

Defendant Zuk acted with malice and intentional disregard for Plaintiff's constitutional rights, as evidenced by:

the deliberate fabrication of facts and law; reckless disregard

for readily available exculpatory evidence; refusal to

investigate contrary facts;

continued prosecution through trial using substituted and false documentation. *McDonough v. Smith (2019):Injury persists as long as the prosecution continues based on that false evidence.*

109. Under McNair v. Erwin, 90 Ohio App.3d 284 (1993), legal malice may be inferred when a defendant initiates criminal proceedings without probable cause or in the absence of a reasonable belief that probable cause exists. Fabricating, misrepresenting, or selectively presenting facts to create the appearance of probable cause constitutes a classic example of a want of probable cause and supports an inference of legal malice. Likewise, Regina v. Cunningham [1957] 2 QB 396 clarifies that malice may extend beyond personal ill will to include a reckless disregard for the consequences of one's actions. In this case, Defendant Zuk issued a citation and initiated prosecution against Plaintiff despite the complete absence of any lawful basis, in direct contradiction to video evidence and other objective facts. Her actions reflect a reckless disregard for Plaintiff's constitutional rights and satisfy the standard for legal malice under Ohio law.

110. Defendant Zuk issued a citation claiming that Plaintiff violated Ohio Rev. Code § 4511.81 because the car seat was not properly installed and was located in the front seat of a pickup truck. This explanation is legally incorrect, as Ohio law does not require a car seat to be properly installed while the vehicle is unoccupied, nor does it prohibit placement of a car seat in the front seat under the circumstances presented, particularly when the child was not being transported in a moving vehicle. No child-restraint violation occurred at the time of the encounter, and no statutory offense was being committed. Because no statutory violation existed, Defendant Zuk lacked probable cause to issue the citation. Under McNair v. Erwin, 90 Ohio App.3d 284 (1993), legal malice may be inferred from a want of probable cause, and under Reeves v. Sanderson Prods., Inc., 530 U.S. 133 (2000), a false or fabricated explanation permits an inference of improper or malicious intent. Defendant Zuk's issuance of a citation based on an objectively non-existent offense demonstrates reckless disregard for Plaintiff's rights and constitutes legal malice under Ohio law.

111. Plaintiff plausibly alleges malice sufficient to sustain a malicious-prosecution claim because Defendant Zuk initiated and continued criminal proceedings in the complete absence of probable cause and with knowing or reckless disregard for the truth. The Supreme Court has long held that malice may be inferred where a defendant proceeds without probable cause, even in the absence of direct

evidence of personal animus. Stewart v. Sonneborn, 98 U.S. 187, 194 (1878). That inference is reinforced where, as alleged here, the defendant advances factual assertions that are contradicted by objective evidence and persists in prosecution despite the lack of any lawful basis. Under New York Times Co. v. Sullivan, "actual malice" is established where a defendant acts with knowledge that a statement is false or with reckless disregard as to whether it is true or false. 376 U.S. 254, 279–80 (1964).

112. Defendant Zuk's fabrication of a traffic violation, misstatements in official reports, sworn testimony contradicted by video evidence, and trial-stage reliance on substituted or demonstrably false documentation plausibly establish both the absence of probable cause and actual malice as a matter of law. Taken together, these allegations permit a reasonable inference that the prosecution was driven not by legitimate law-enforcement objectives, but by knowing falsity or reckless indifference to the truth.

113. Because it was clearly established at the time of the conduct that an officer may not initiate or continue a prosecution based on fabricated or recklessly false evidence, no reasonable officer could believe such conduct was constitutionally permissible, and qualified immunity is therefore unavailable. Defendant's actions were not the result of mistake, negligence, or oversight, but conscious decisions designed to initiate and sustain a prosecution where none was legally or factually justified.

114. Malicious Prosecution — Fabrication, Inconsistent Probable-Cause Theories, and Malice Established by Record Contradictions

The record demonstrates that Officer Zuk advanced three materially inconsistent and irreconcilable factual bases for initiating and pursuing prosecution against Plaintiff, none of which withstand scrutiny. First, the official police report asserts that probable cause was established by Officer Zuk's visual inspection through the vehicle window, a method expressly prohibited by Ohio Revised Code § 4511.01€ absent another violation of law. Second, the traffic citation itself asserts a different factual basis—namely, that Officer Zuk observed Plaintiff exit the vehicle, thereby implying contemporaneous operation. Third, during a recorded court proceeding, Officer Zuk offered yet another version under oath, testifying that she simultaneously observed Plaintiff exit the driver's side, visually inspected the interior to identify a child-restraint system, relied on statements from both parents regarding the child's age, and then physically adjusted the restraint before issuing the citation.

115. These shifting narratives are not minor discrepancies; they reflect post hoc reconstruction of probable cause tailored to the forum in which the justification was offered. Video and audio evidence confirm that Officer Zuk did not contemporaneously observe Plaintiff operating the vehicle, did not lawfully inspect

the vehicle interior as claimed, and re-initiated contact only after the original trespass investigation had concluded. Where an officer supplies conflicting factual justifications across official reports, charging instruments, and sworn testimony, a reasonable jury may infer that probable cause was fabricated after the fact and that the prosecution was initiated and maintained for an improper purpose. See Sykes v. Anderson, 625 F.3d 294, 305–09 (6th Cir. 2010); Jackson v. City of Cleveland, 925 F.3d 793, 815–21 (6th Cir. 2019).

116. The existence of multiple, mutually exclusive probable-cause theories—each contradicted by other parts of the record—precludes any claim of good-faith mistake. Instead, it supports a finding that Officer Zuk knowingly advanced false or misleading statements to justify enforcement action that lacked lawful foundation. Such conduct establishes both the absence of probable cause and the presence of malice, as the prosecution was pursued not to bring Plaintiff to justice, but to retroactively legitimize an unlawful detention and citation. Accordingly, Defendants are not entitled to qualified immunity, and summary judgment on Plaintiff's malicious-prosecution claim must be denied.

117. G. Clearly Established Law and Comparable Precedent

Courts in this Circuit consistently deny qualified immunity where officers fabricate or alter facts to justify prosecution. Lea v. Conrad, 2022 WL 4244215, at *14–16 (W.D. Ky. Sept. 14, 2022); Lewis v. Young, No. 2:10-cv-00125 (S.D. Ohio).

In Lea, the court emphasized that fabricated or contradicted assertions cannot form a lawful basis for prosecution and must be resolved by a jury.

118. The facts here closely mirror Gillispie v. Miami Township, No. 3:13-cv-416 (S.D. Ohio 2022), where a jury awarded substantial damages after finding that officers fabricated evidence, ignored exculpatory proof, and continued a prosecution without probable cause.As in Gillispie, Defendant Zuk knowingly created false allegations and pursued prosecution despite evidence disproving her claims, conduct that defeats qualified immunity.

119. H. Fabrication of Evidence and Clearly Established Law

Plaintiff plausibly alleges malicious prosecution in violation of the Fourth and Fourteenth Amendments because Defendant Zuk knowingly initiated and continued criminal proceedings by fabricating evidence and swearing to materially false facts. The Sixth Circuit has long held that an officer violates clearly established constitutional law when she knowingly makes false statements in police reports or under oath that are material

to the initiation or continuation of a prosecution. King v. Harwood, 852 F.3d 568, 580–81 (6th Cir. 2017); Sykes v. Anderson, 625 F.3d 294, 305–06 (6th Cir. 2010).

120. An officer who lies to justify enforcement or sustain prosecution forfeits qualified immunity because the right to be free from perjurious or recklessly false statements used to secure prosecution is clearly established. United States v. Spry, 1999 WL ___ (6th Cir. 1999). Here, Defendant Zuk advanced sworn assertions and documentary evidence that were contradicted by objective video footage, including statements attributing conduct to Plaintiff that did not occur and referencing nonexistent or misidentified parties. These fabricated assertions were material to probable cause, charging decisions, and the continuation of proceedings. Because no reasonable officer could believe it lawful to fabricate facts or swear falsely to sustain a prosecution, Plaintiff states a viable malicious-prosecution claim, and qualified immunity is unavailable.

121. Malicious Prosecution — Fabrication of Legal Basis Under Oath

During Plaintiff's criminal trial, Officer Zuk testified under oath that "the law specifically states" that a child under four years old and under forty pounds must be seated in the rear of a vehicle. Contemporaneous audio recordings and transcripts confirm this testimony. The presiding judge halted the proceedings to independently verify the asserted law and determined that no such statute exists. This was not a misstatement of fact or a reasonable mistake of interpretation, but an affirmative misrepresentation of the governing law offered to justify the citation and prosecution.

122. A reasonable jury could conclude that Officer Zuk knowingly or recklessly advanced a false legal premise to supply probable cause where none existed. The fabrication of legal authority—particularly during sworn testimony—supports a strong inference of malice, as it reflects an improper purpose to sustain a prosecution rather than to accurately inform the court. See Sykes v. Anderson, 625 F.3d 294, 305–09 (6th Cir. 2010) (malice may be inferred where an officer knowingly or recklessly makes false statements material to prosecution); Jackson v. City of Cleveland, 925 F.3d 793, 815–21 (6th Cir. 2019).

123. Because probable cause cannot rest on invented law, Officer Zuk's testimony further establishes that the prosecution lacked a lawful foundation from its inception and was continued through the use of false legal assertions. No objectively reasonable officer with years of experience could believe that fabricating statutory requirements under oath was lawful or permissible. Accordingly, the evidence supports each element of malicious prosecution and forecloses qualified immunity as a matter of law.

124. H. Damages

As a direct and proximate result of Defendant Zuk's malicious prosecution, Plaintiff suffered loss of liberty, emotional distress, humiliation, reputational harm, economic loss, legal expenses, and other damages recoverable under § 1983.

WHEREFORE

Plaintiff demands judgment against Defendant Officer Jessica Zuk for compensatory damages, punitive damages, attorneys' fees under 42 U.S.C. § 1988, costs, and all other relief this Court deems just and proper.


COUNT 4— Fourteenth Amendment Due Process Fabrication of Evidence (§ 1983)*

*Against Defendant Officer Jessica Zuk*

125. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully rewritten herein.

126. The Fourteenth Amendment's Due Process Clause prohibits law-enforcement officers from knowingly fabricating evidence or making material misrepresentations that are used to initiate or continue criminal proceedings. Defendant Officer Jessica Zuk knowingly fabricated material facts and misrepresented the law, and submitted false information that caused Plaintiff to be detained, cited, and prosecuted without probable cause.

127.

A. Clearly Established Right Against Fabrication

The Sixth Circuit has long held that an officer violates the Fourteenth Amendment when she knowingly fabricates or materially misrepresents evidence used to initiate or continue criminal proceedings. Sykes v. Anderson, 625 F.3d 294, 305–06 (6th Cir. 2010); Miller v. Maddox, 866 F.3d 386, 391–92 (6th Cir. 2017). Such conduct constitutes a dueprocess violation independent of the initial seizure, because fabricated evidence corrupts the integrity of the criminal process itself. King v. Harwood, 852 F.3d 568, 580–84 (6th Cir. 2017). The Supreme Court and federal courts have consistently recognized that officers may not manufacture or falsify evidence to initiate or support a criminal prosecution. In Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001), the court held that fabrication of evidence in a criminal prosecution violates clearly established constitutional rights. Similarly, in Richards v. County of San Bernardino, 28 F.4th 1024 (9th Cir. 2022), and McDonough v. Smith, 139 S. Ct. 2149 (2019), courts reaffirmed that a plaintiff may pursue a §1983 claim where an officer knowingly or recklessly creates false evidence that leads to legal process against an individual

128. **B. Knowingly False Information**

The officer's conduct further supports a fabrication-of-evidence claim because she knowingly recorded materially false information in official law-enforcement documents that formed the basis of enforcement action. Specifically, the officer listed an individual—Michael Paul Hessler—as a present party in both the traffic citation and the police report, despite that individual not being present at the scene. The report further attributed personal identifiers to the non-present individual, including address, race, and physical descriptors, thereby affirmatively representing a police encounter and seizure that never occurred. This was not a minor clerical mistake; it was a substantive falsification that distorted the factual narrative of the incident and lent false credibility to the stop, investigation, and enforcement. By fabricating the presence and involvement of a non-existent party, the officer manufactured facts to justify police action and memorialized those falsehoods in official records, directly violating Plaintiff's constitutional right to be free from the use of fabricated evidence in law-enforcement proceedings.

129. **C. Fabrication of Law**

Defendant Zuk knowingly misrepresented Ohio law by asserting that the presence of a properly secured child seat in the front seat of a three-seat pickup truck was illegal. In reality, Ohio Revised Code § 4511.81€ expressly provides that a child-restraint issue cannot form the basis of a stop, detention, or citation absent another, independent traffic violation, and nothing in Ohio law prohibits the placement of a child seat in the front seat of a three-seat truck.

> 130. Defendant Zuk nevertheless invented a nonexistent legal standard and affirmatively used that false rule as the sole basis for detaining and citing Plaintiff.

This was not a reasonable mistake of law. During the encounter, Defendant Zuk visibly hesitated, raised her hands in confusion, and stuttered while asserting that "driving with a car seat in the front seat is illegal," then proceeded to rely on that fabricated legal premise to justify enforcement. Inventing a legal prohibition that does not exist, and using it to manufacture probable cause, constitutes fabrication of law and violates clearly established due-process protections. King, 852 F.3d at 583–85.

131. **C Fabrication of Facts**

Defendant Zuk also fabricated material facts to support the false legal theory she created.Specifically, Defendant Zuk falsely claimed that she observed Plaintiff exit the vehicle with his child, despite video evidence conclusively showing that Plaintiff was standing outside the parked truck before Defendant Zuk ever arrived.

132.    Defendant Zuk further entered fictitious identifying information on the citation, including a fabricated name ("Michael Paul Hessler") associated with a different race, height, and address—information that did not correspond to Plaintiff or any person present at the scene.These false factual assertions were material. They were used to manufacture the appearance of a traffic offense, justify continued detention, and initiate criminal proceedings.

133.    The knowing creation of false observations, misidentification of the accused, and falsification of official documents constitutes actionable fabrication under the Fourteenth Amendment. Jackson v. City of Cleveland, 925 F.3d 793, 816–18 (6th Cir. 2019).

134.    D. Post-Issuance and Trial-Stage Fabrication

Defendant Zuk's fabrication did not end with the issuance of the citation.

135.    At Plaintiff's February 2025 trial, Defendant Zuk presented to the court an entirely different electronically filed traffic citation bearing Plaintiff's correct name and information, despite video evidence establishing that this electronic citation was not the ticket issued to Plaintiff on September 25, 2024.

136.    This post-issuance substitution of evidence was an intentional act designed to retroactively manufacture probable cause and sustain criminal proceedings that otherwise lacked any lawful foundation.

137.    The Sixth Circuit has held that fabrication occurring after arrest—when used to prolong prosecution—violates due process and independently supports § 1983 liability. Jackson, 925 F.3d at 836–38; Sykes, 625 F.3d at 308–10.

138.    Continuing Seizure — Trial-Stage Fabrication as Ongoing Fourth Amendment Violation Defendant Zuk's constitutional violations did not terminate with the issuance of the citation but continued throughout the pendency of the criminal case, subjecting Plaintiff to an unlawful, ongoing Fourth Amendment seizure. The Sixth Circuit recognizes that pretrial obligations, court appearances, and prosecution-related restraints constitute a continuing seizure when they are sustained by fabricated evidence. Mills v. Barnard, 869 F.3d 473, 480–82 (6th Cir. 2017); Jackson v. City of Cleveland, 925 F.3d 793, 836–38 (6th Cir. 2019). Officers who knowingly provide false information that prolongs prosecution are liable for the resulting deprivation of liberty. Sykes, 625 F.3d at 308–10. Here, Defendant Zuk compounded the initial unlawful

seizure by presenting at trial an electronic citation different from the one issued at the scene and by reaffirming false factual claims under oath— despite readily available video evidence disproving them. This trial-stage fabrication directly caused

Plaintiff's prosecution and liberty restrictions to persist from September 25, 2024 through dismissal on February 4, 2025. Because the prohibition against using fabricated or perjurious evidence to prolong a seizure was clearly established at the time, Defendant Zuk is not entitled to qualified immunity, and Plaintiff plausibly alleges a continuing Fourth Amendment violation.

139. E. Causation and Deprivation of Liberty

Defendant Zuk's fabricated legal standards, false factual claims, falsified identifying information, and altered documentation were relied upon by prosecutors and the Avon Lake Municipal Court to initiate and continue criminal proceedings against Plaintiff.

These fabrications directly caused Plaintiff's unlawful detention, continuing seizure, prosecution, mandatory court appearances, emotional distress, reputational harm, economic loss, and other damages.

Under Sixth Circuit precedent, an officer is liable where fabricated evidence is a foreseeable and proximate cause of prosecution and resulting liberty deprivations. Miller, 866 F.3d at 392; Sykes, 625 F.3d at 308–10.128.

140. Clearly Established Law and Qualified Immunity

Courts in this Circuit repeatedly deny qualified immunity where officers exaggerate, misstate, or fabricate observations to justify enforcement or prosecution. Lea v. Conrad, No. 3:19-cv-419, 2022 WL 4244215, at *15–17 (W.D. Ky. Sept. 14, 2022).

In Lea, the court held that where evidence suggests an officer fabricated or exaggerated facts to justify a seizure or prosecution, credibility determinations must be made by a jury and immunity cannot be resolved at the pleadings stage.

Similarly, in Lewis v. Young, Case No. 2:10-cv-00125-ALM-EPD (S.D. Ohio), the court denied qualified immunity where officers allegedly "manufactured the justification for enforcement action" through fabricated facts and misstatements of law.

141. The law has long been clearly established that an officer may not:

Invent a legal standard that does not exist;

Fabricate observations contradicted by known evidence;

Falsify identifying information;

Or alter or substitute evidence to sustain prosecution.

      142.    No reasonable officer could believe such conduct lawful.

The Sixth Circuit and federal courts have long held that a law-enforcement officer violates the Constitution when she knowingly makes false statements or swears to materially untrue facts in police reports or under oath to justify a seizure, admit evidence, or continue a prosecution. See United States v. Spry, 1999 WL ___ (6ᵗʰ Cir. 1999) (holding that an officer who lies in a report or under oath forfeits qualified immunity because the right to be free from perjurious or recklessly false statements used to secure evidence or sustain prosecution is clearly established); King v. Harwood, 852 F.3d 568, 580–81 (6ᵗʰ Cir. 2017) (fabrication of evidence used to initiate or continue criminal proceedings violates the Fourteenth Amendment); Sykes v. Anderson, 625 F.3d 294, 305–06 (6ᵗʰ Cir. 2010).

      143.    Here, Defendant Zuk knowingly advanced factual assertions in official reports and sworn testimony that were contradicted by objective video evidence, including statements identifying nonexistent individuals and falsely claiming observations that did not occur. Such conduct is not protected by qualified immunity because no reasonable officer could believe it lawful to fabricate or swear to false facts in order to justify enforcement or prosecution. The constitutional prohibition against perjury and deliberate falsification by police officers was clearly established well before the events at issue, and Defendant Zuk's actions therefore state a plausible claim for fabrication of evidence under § 1983.

      144.    Damages

As a direct and proximate result of Defendant Zuk's fabrication of evidence, Plaintiff suffered unlawful seizure, deprivation of liberty without due process, loss of employment, reputational harm, emotional distress, economic loss, and other compensable damages.

WHEREFORE

Plaintiff demands judgment against Defendant Officer Jessica Zuk for compensatory damages, punitive damages, attorneys' fees under 42 U.S.C. § 1988, costs, and all other relief this Court deems just and proper.

COUNT 5 442 U.S.C. § 1983 — FOURTEENTH AMENDMENT

SELECTIVE ENFORCEMENT / RACIAL DISCRIMINATION (EQUAL PROTECTION)

*Against Avon Ohio Police Officer Zuk*

>145.    Plaintiff incorporates all preceding paragraphs as though fully restated herein.

A. Equal Protection Principles

The Equal Protection Clause of the Fourteenth Amendment prohibits law enforcement officers from selectively enforcing the law or engaging in disparate treatment based on race or other impermissible classifications.

>146.    Even facially neutral laws violate Equal Protection when applied "with an evil eye and an unequal hand." Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886).

>147.    Racially selective enforcement by police officers is unconstitutional and actionable under 42 U.S.C. § 1983. Whren v. United States, 517 U.S. 806 (1996); Farm Labor Org. Comm. V. Ohio State Highway Patrol, 308 F.3d 523 (6ᵗʰ Cir. 2002).

>148.

B. Similarly Situated Comparator and Disparate Treatment

On September 25, 2024, Plaintiff, an African-American male, and Bethany Perkins, a white female, were present together and similarly situated during the encounter at issue.

149.    Both individuals had equal access to the child and vehicle, and the alleged "childrestraint violation" was equally observable and equally applicable to both.

150.    Despite this, Defendant Officer Jessica Zuk investigated, detained, accused, cited, and initiated prosecution only against Plaintiff, while declining to investigate, question, detain, or cite Ms. Perkins for any offense.

151.    Defendant Zuk fabricated a "child-restraint" traffic violation against Plaintiff despite undisputed video evidence showing the vehicle was not in motion and Plaintiff was outside the vehicle, and despite Ohio Rev. Code § 4511.81€ prohibiting detention based solely on such an allegation.

152.    The only material distinction between Plaintiff and Ms. Perkins was race. Defendant Zuk treated Plaintiff differently from a similarly situated white individual without any legitimate law-enforcement justification.

153.    C. Selective Enforcement and Racial Discrimination

Defendant Zuk selectively enforced the law against Plaintiff based on race by fabricating a traffic offense, misidentifying Plaintiff on the citation, submitting a false investigative report, and escalating the encounter into punitive enforcement.

154.    These actions were taken against Plaintiff alone and not against the similarly situated white individual present during the encounter.

155.    Such racially disparate enforcement violates clearly established Equal Protection law. Wren, 517 U.S. 806; Avery, 137 F.3d 343; Farm Labor, 308 F.3d 523.

156.    C. Discriminatory Intent and Racial Animus

Defendant Zuk's discriminatory intent and racial animus are demonstrated by the totality of the circumstances, including:

a. Fabrication of a child-restraint violation unsupported by law or fact;

b. Falsification of investigative reports and material facts;

c. Selective targeting of Plaintiff while exempting a similarly situated white individual;

d. Deviation from mandatory K-9 professional standards under Ohio Administrative Code 109:2-7-03.

157.    Discriminatory intent may be established through circumstantial evidence and patterns of disparate treatment, even in the absence of direct proof. By analogy, Batson v. Kentucky, 476 U.S. 79 (1986), permits proof of discriminatory purpose based on selective treatment and the absence of credible, race-neutral explanations.

158.    Application of the Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977), factors further supports a reasonable inference of racial discrimination:

a.    Historical background — prior incidents involving the Avon Police Department, including the Ahmed Al-Menhali matter, placed the Department on notice of racially biased enforcement risks;

b.    Sequence of events — Defendant Zuk selectively targeted Plaintiff for investigation and citation while entirely exempting Ms. Perkins;

c.    Departures from normal procedures — fabrication of charges, false reporting, and enforcement of an unenforceable statute;

d.    Substantive effect — Plaintiff alone was subjected to detention, citation, and prosecution;

e.    Absence of race-neutral justification — Defendant Zuk lacked any legitimate law-enforcement reason for the disparate treatment.

159.    Sixth Circuit precedent confirms that discriminatory intent may be inferred from circumstantial evidence in selective enforcement cases. Farm Labor, 308 F.3d at 538; United States v. Avery, 137 F.3d 343, 353 (6th Cir. 1997).

Plaintiff reasonably believes Defendant Zuk acted with racial animus based on the fabricated investigation, false reporting, escalation of enforcement, and refusal to investigate the similarly situated white individual.

160.    Clearly Established Law and Qualified Immunity

At the time of Defendant Zuk's conduct, it was clearly established beyond debate that law-enforcement officers may not selectively enforce laws or exercise enforcement discretion on the basis of race, nor intentionally treat a person differently from a similarly situated individual without a legitimate, race-neutral justification. The Equal Protection Clause of the Fourteenth Amendment prohibits both race-based selective enforcement and intentional, irrational disparate treatment—a principle settled for well over a century. See Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886) (a law "fair on its face" violates Equal Protection when applied with an "evil eye and an unequal hand").

161.    The Equal Protection Clause prohibits selective enforcement based on unjustifiable classifications, including race, and provides the foundation for claims against arbitrary or discriminatory policing. In Oyler v. Boles, 368 U.S. 448 (1962), and Rose v. Mitchell, 443 U.S. 545 (1979), the Supreme Court affirmed that selectively enforcing the law against certain individuals while exempting others similarly situated violates the Equal Protection Clause. The Court has repeatedly held that racially selective law enforcement is unconstitutional, even when officers otherwise possess discretionary authority. In Whren v. United States, 517 U.S. 806, 813 (1996), the Court clarified that, although subjective intent generally does not affect Fourth Amendment analysis, the Equal Protection Clause explicitly forbids selective enforcement based on race.

162.    The Sixth Circuit has consistently applied this principle, holding that officers violate clearly established law when targeting individuals for investigation or enforcement based on race or other impermissible considerations. See Farm Labor Organizing Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 533–38 (6th Cir. 2002) (racially selective enforcement by Ohio troopers actionable under §1983); United States v. Avery, 137 F.3d 343, 353 (6th Cir. 1997) (race may not be a motivating factor in police investigative decisions). Defendant Zuk's actions,

in selectively attributing responsibility and targeting Plaintiff while exempting similarly situated individuals, constitute conduct that violates clearly established constitutional protections against arbitrary and discriminatory enforcement.

163. It has also long been clearly established that discriminatory intent may be proven circumstantially, including through disparate treatment of similarly situated individuals and the absence of a credible, race-neutral explanation. Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 266–68 (1977). Courts consider the historical background of the decision, the sequence of events, departures from normal procedures, and the substantive effect of the action. Id. Sixth Circuit precedent confirms that selective enforcement against a minority individual, coupled with non-enforcement against a similarly situated white comparator, permits a reasonable inference of discriminatory intent at the pleading stage. Farm Labor, 308 F.3d at 538; Avery, 137 F.3d at 353.

164. Independently, the law was clearly established that intentional disparate treatment without a rational basis violates Equal Protection even under a "class-of-one" theory, and therefore a fortiori where race is alleged. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Likewise, government action resting on irrational prejudice or arbitrary enforcement, rather than a legitimate governmental purpose, violates Equal Protection even under rational-basis review. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 446–50 (1985). Under these precedents, an officer may not fabricate or selectively apply enforcement authority against one individual while exempting a similarly situated person for no lawful reason.

165. Here, Plaintiff plausibly alleges that Defendant Zuk fabricated a traffic violation, selectively enforced an unenforceable statute against Plaintiff alone, exempted a similarly situated white individual, and departed from ordinary enforcement and professional standards—conduct that squarely falls within the heartland of clearly established Equal Protection violations. No reasonable officer could believe that fabricating a violation, targeting a Black individual for investigation and citation, and declining to investigate an equally situated white comparator was lawful. The constitutional prohibition against racially selective enforcement was "clearly established" well before the events at issue, and Defendant Zuk had fair warning that such conduct was unconstitutional.

166. Accordingly, because the right to be free from racially discriminatory and selectively enforced policing was clearly established at the time of Defendant Zuk's actions, and because Plaintiff plausibly alleges intentional disparate treatment unsupported by any race-neutral justification, qualified immunity is unavailable, and dismissal at the pleading stage is improper.

167. F. Damages

As a direct and proximate result of Defendant Zuk's unconstitutional conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, reputational harm, economic loss, and continued prosecution without cause.

WHEREFORE

Plaintiff demands judgment against Defendant Jessica Zuk for compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

COUNT 6 — Monell Liability Against the City of Avon

42 .S.C. § 1983 (Failure to Train, Supervise, Discipline, and Ratification)

No exhaustion of administrative remedies is required before bringing this claim against a municipality under § 1983. Patsy v. Bd. Of Regents, 457 U.S. 496, 516 (1982).

168. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

169. Governing Standard

A municipality is liable under § 1983 when an official policy, custom, or practice— including a failure to train, supervise, discipline, or investigate—reflects deliberate indifference to constitutional rights and is the moving force behind a plaintiff's injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); City of Canton v. Harris, 489 U.S. 378, 388–89 (1989). Deliberate indifference may be shown where policymakers are on notice of a pattern of unconstitutional conduct yet fail to take corrective action. Connick v. Thompson, 563 U.S. 51, 61–63 (2011); Wright v. City of Euclid, No. 19-3452, 2020 WL ___ (6th Cir. 2020).

170. A. Notice of Discriminatory and Unconstitutional Policing

Plaintiff plausibly alleges that the City of Avon had actual and constructive notice of constitutionally deficient policing practices within the Avon Police Department ("APD") well before the events at issue.

171. The city was on notice from prior federal civil-rights litigation arising out of APD's unlawful detention and biased enforcement practices, including Al-Menhali v. Marriott Int'l, Inc., et al., No. 1:17-cv-01089 (N.D. Ohio). That case involved the detention of an Emirati visitor based on unverified information and resulted in national attention and a settlement. The lawsuit alleged unconstitutional detention, lack of probable cause, and reliance on unfounded suspicion—precisely the same deficiencies alleged here. A prior settlement for unconstitutional policing constitutes notice that existing training and supervision were inadequate. See Wright, supra.

172.

A. Deliberate Indifference — K-9 Unit Oversight (Judge-Style)

Plaintiff plausibly alleges deliberate indifference based on the City of Avon's failure to supervise and audit its K-9 unit, despite the heightened autonomy, discretionary authority, and public impact inherent in K-9 policing. Municipal liability may attach where a city fails to implement oversight mechanisms for officers operating in high-discretion roles and where constitutional violations are a foreseeable consequence of that omission.

173. Recent decisions from Ohio federal courts confirm that a Monell claim survives dismissal when a plaintiff pleads specific, nonconclusory facts demonstrating unconstitutional conduct attributable to municipal training or supervision failures. See Buehner v. City of Cleveland (2025) (denying dismissal where allegations of evidence suppression and improper identification supported an inference of municipal custom); Crable v. City of Cleveland (2024) (denying judgment on the pleadings where detailed allegations of unlawful seizure, false arrest, and malicious prosecution plausibly reflected municipal deliberate indifference). As in those cases, Plaintiff alleges concrete acts—racially selective enforcement, fabrication of evidence, and unlawful detention—carried out by a K-9 officer operating without meaningful supervision or auditing.

174. These allegations permit a reasonable inference that the City's failure to supervise high-discretion K-9 officers was not accidental but reflected deliberate indifference, rendering the alleged constitutional violations foreseeable rather than isolated. At the pleading stage, such factual specificity is sufficient to state a plausible Monell claim and to warrant discovery.

175.    B. Custom, Practice, and Deliberate Indifference

Despite this notice, the City of Avon maintained customs of inadequate training, supervision, and discipline concerning:

Race-neutral enforcement and bias prevention,

Lawful bases for detention and traffic enforcement,

Accuracy and integrity of police reports and citations, and

Constitutional limits on investigatory escalation and continued detention.

176.    These deficiencies were particularly acute with respect to high-discretion officers, including K-9 handlers, who operate with enhanced autonomy and public impact.

177.    Under Ohio Administrative Code 109:2-7-03, K-9 officers are subject to heightened training, professionalism, and accuracy requirements.

178.    Yet the City failed to ensure compliance with those standards and permitted Defendant Zuk to operate without meaningful supervisory review of her enforcement decisions, citation practices, bias-free policing obligations, or constitutional compliance. The need for such training and oversight was obvious, and the City's failure to provide it constitutes deliberate indifference under City of Canton, 489 U.S. at 390.

179.    "The City's deliberate indifference is further demonstrated by its customs, training failures, and ratification of unconstitutional Terry frisks during the incident at issue."

180.    C. Policy, Practice, or Custom of Unconstitutional Frisks

Defendant City of Avon, through its Avon Police Department, maintained policies, practices, or customs that permitted officers to conduct warrantless pat-down searches (frisks) without the reasonable suspicion required by Terry v. Ohio.

181.    On September 25, 2024, multiple Avon police officers participated in or authorized a pat-down of Plaintiff, despite Plaintiff not being suspected of any crime and without any articulable facts suggesting Plaintiff was armed or dangerous.

182.    The participation of more than one officer—including Officers Alexis Dixon and Jason Hunt, acting with the presence of Officer Jessica Zuk—demonstrates that the unconstitutional frisk was not an isolated act, but rather reflective of a departmental practice tolerated within the Avon Police Department.

183. The coordinated nature of the frisk, and the absence of any intervention by supervising or senior officers on scene, supports a reasonable inference that unlawful frisks are routinely permitted or overlooked, constituting a municipal custom.

184. D. Failure to Train on Terry Frisks

Defendant City of Avon had a non-delegable duty to adequately train its officers on the clearly established limits of Terry frisks, including that a pat-down is lawful only when an officer has reasonable suspicion that a person is armed and dangerous.

185. The frisk of Plaintiff—conducted when Plaintiff was not under arrest, not suspected of any crime, and posed no safety threat—demonstrates that Avon police officers were not properly trained on the constitutional prerequisites for a lawful frisk.

186. The fact that multiple officers participated in or acquiesced to the frisk further establishes that the lack of training was systemic, not the result of a single officer's misunderstanding.

187. The need for training on Terry frisks is obvious, as unlawful pat-downs constitute a direct and recurring violation of the Fourth Amendment and predictably lead to constitutional injury. Defendant City of Avon's failure to train its officers on the lawful limits of frisks amounts to deliberate indifference to the rights of individuals with whom Avon police officers come into contact.

188. E. Ratification of Unlawful Conduct

Following the incident, the official police report was reviewed and approved by supervisory personnel, despite documenting an encounter that included an unlawful frisk unsupported by reasonable suspicion.

189. No corrective action, discipline, or remedial training was imposed on Officers Dixon, Hunt, or Zuk for the unconstitutional frisk of Plaintiff.

190. The City of Avon further ratified the unconstitutional conduct by allowing the resulting prosecution to proceed, relying on officer reports and charging documents that arose from an encounter tainted by Fourth Amendment violations.

191. By approving the reports, failing to correct the unlawful frisk, and allowing the prosecution to move forward, Defendant City of Avon affirmatively endorsed and adopted the officers' conduct as consistent with municipal policy.

192.   This ratification constitutes an independent basis for municipal liability under Monell v. Department of Social Services, as the City made a deliberate choice to approve and uphold unconstitutional conduct.

193.   The unconstitutional frisk of Plaintiff was a moving force behind Plaintiff's injuries, including loss of liberty, humiliation, emotional distress, and other damages.

194.   F. Official Policy Causing Procedural Due Process Violations

-Avon Ohio Ordinance 454.03-

The City of Avon is plausibly liable under Monell because Plaintiff alleges that his constitutional injuries flowed directly from the City's official traffic-enforcement policies governing parked and non-moving vehicles. Under Ohio law, conduct occurring while a vehicle is parked and not in motion constitutes, at most, a parking or equipment matter—not a moving traffic offense.

195.   Consistent with this framework, the Avon Police Department mandates use of the

Ohio Uniform Traffic Ticket pursuant to Ohio Supreme Court Traffic Rule 3, which expressly makes use of the uniform ticket optional for parking and equipment violations, thereby vesting local policymakers with discretion over how such conduct is classified, cited, and prosecuted. Plaintiff plausibly alleges that Avon exercised this policy-level discretion in a manner that authorized citation, prosecution, and detention without lawful traffic jurisdiction or adequate procedural safeguards, resulting in a deprivation of Plaintiff's Fourteenth Amendment procedural due process rights. Because the alleged constitutional violation flowed from the City's own policy decisions regarding traffic classification and citation authority—rather than from a purely ad hoc officer error— municipal liability is adequately pleaded under Monell, independent of individual misconduct.

196.   The same discretionary enforcement framework also plausibly facilitated the selective and racially disparate enforcement alleged elsewhere in the complaint, by permitting officers to subjectively reclassify parked-vehicle conduct as moving violations. Plaintiff alleges that Defendant Zuk exercised this discretion against him, but not against a similarly situated white comparator, thereby linking the City's policy choices directly to both the procedural due process and Equal Protection violations at issue. At the pleading stage, these allegations are sufficient to establish municipal causation and to preclude dismissal under Rule 12(b)(6).

197.    G. Custom of Inadequate Discipline— Municipality's Tolerance of Misconduct

Plaintiff further alleges that the City maintained a municipal custom of inadequate discipline and tolerance of officer misconduct, giving rise to Monell liability. As recognized in McTigue v. City of Chicago, municipal liability attaches where constitutional violations are the predictable result of systemic failures in supervision or discipline, rather than isolated error.

198.    The Sixth Circuit likewise holds that a municipality's tolerance of prior misconduct can establish an actionable custom. Wright v. City of Euclid, No. 19-3452 (6th Cir. 2020). Here, as recently as 2023, an Avon Police Department officer was publicly terminated only after it was revealed that he carried a concealed weapon while intoxicated, conduct representing a serious breach of fundamental policing standards. That such misconduct persisted before decisive action was taken evidences deficient oversight and a tolerance for grave violations.

199.    This history demonstrates deliberate indifference by municipal policymakers and supports the conclusion that the constitutional violations suffered by Plaintiff were caused by entrenched municipal customs and failures to discipline, supervise, and correct officer misconduct, rather than by the actions of a single rogue officer. Municipal Ratification Through Approval of Official Police Report

200.    H. Municipal Ratification Through Approval of Official Police Report

Under Monell v. Department of Social Services, 436 U.S. 658 (1978), and City of St. Louis v. Praprotnik, 485 U.S. 112 (1988), a municipality is liable under 42 U.S.C. § 1983 when a final policymaker approves, ratifies, or adopts unconstitutional conduct, thereby making the conduct attributable to the municipality itself.

201.    Following the incident at issue, the City of Avon, acting through supervisory personnel with final authority over police reports and enforcement actions, reviewed and approved the official police report authored by Defendant Officer Jessica Zuk. 202. The supervisory approval of the report constituted an affirmative act of ratification, adopting the report and its contents as the official position of the City of Avon.

203  The approved police report documented materially unconstitutional conduct on its face, including, but not limited to, the following:

- Falsely identifying a "driver" who was not present at the scene, thereby misrepresenting who was involved in the encounter and who could lawfully be subjected to traffic enforcement;
- Relying on a visual inspection of the interior of a motor vehicle to justify a child-restraint citation, despite Ohio Revised Code § 4511.01€ expressly prohibiting the use of a visual inspection to commence prosecution absent another violation of law;
- Documenting the detention of Plaintiff despite the absence of probable cause, reasonable suspicion, or any lawful basis for seizure.

204. Each of these defects was apparent on the face of the report, required no additional factual investigation to identify, and involved clearly established statutory and constitutional limitations on police authority.

205. By approving the report without correction, rejection, or remedial action, supervisory personnel for the City of Avon ratified the unconstitutional conduct, thereby converting the officers' actions into municipal policy for purposes of Monell liability.

206. The City of Avon further ratified the unconstitutional conduct by allowing the resulting prosecution to proceed based on the approved report and associated charging documents, notwithstanding the report's internal inconsistencies and statutory violations.

207. This approval and adoption of unconstitutional conduct was not inadvertent or clerical, but rather constituted a deliberate municipal choice to endorse and uphold the officers' actions.

208. The supervisor's approval of the police report therefore represents official municipal ratification, rendering Defendant City of Avon directly liable for the constitutional violations suffered by Plaintiff.

209. I. Ratification Contrary to the City's Own Legal Definition of Risk

The City of Avon's ordinances define "risk" as a significant possibility, as opposed to a remote or speculative one. See Avon Codified Ordinances, Chapter 606, § 606.01.

210. Nevertheless, the City approved an official police report and enforcement action that identified no articulable facts demonstrating any meaningful likelihood of harm, supporting an inference that the City ratified a standard of police conduct inconsistent with its own legal definition of risk.

211.  The City's approval of the report under these circumstances further supports an inference of municipal ratification and deliberate indifference under Monell and Praprotnik.

212.. The approved police report was a moving force behind Plaintiff's injuries, including unlawful detention, deprivation of liberty, emotional distress, reputational harm, and the initiation of a prosecution unsupported by law.

213. Plaintiff's injuries were directly and proximately caused by the City of Avon's ratification of unconstitutional conduct through supervisory approval of the official police report.

214.- Municipal Liability Based on Supervisory

Under Monell v. Department of Social Services, 436 U.S. 658 (1978), and City of St. Louis v. Praprotnik, 485 U.S. 112 (1988), a municipality is liable under 42 U.S.C. § 1983 when a final policymaker approves, ratifies, or adopts unconstitutional conduct, thereby rendering that conduct attributable to the municipality itself.

215. Following the September 25, 2024 incident, the City of Avon—acting through supervisory personnel with final authority over police reporting, enforcement validation, and internal approval—reviewed and approved the official police report authored by Defendant Officer Jessica Zuk. That supervisory approval constituted an affirmative act of ratification, adopting the report and its contents as the official position of the City. 216. The approved police report documented constitutional and statutory violations apparent on its face, including: (a) the false identification of an individual as a "driver" who was not present at the scene; (b) reliance on a statutorily prohibited visual inspection of a vehicle's interior to justify a child-restraint citation, contrary to Ohio Revised Code § 4511.01€; and (c) documentation of Plaintiff's detention absent probable cause, reasonable suspicion, or any lawful basis for seizure.

217.  Each defect was facially evident, required no further investigation to identify, and implicated clearly established limits on police authority. By approving the report without correction, rejection, or remedial action, supervisory policymakers for the City of Avon knowingly ratified unconstitutional conduct, converting the officers' actions into official municipal policy for purposes of Monell liability.

218.  -Continuing Municipal Ratification Through Governance and Record-Custodial Inaction

Municipal ratification did not cease with supervisory approval of the police report. After the conduct at issue had been adopted as official police action, the City of

Avon—through its formal governance and record-custodial mechanisms, including its Council Office—allowed the unconstitutional enforcement to remain operative as municipal action without repudiation, correction, or disavowal. The Council Office functions as the City's custodian of codified ordinances, enforcement frameworks, and official municipal records. Despite notice of the constitutional defects embedded in the approved police report and charging documents, the City permitted the enforcement action to proceed, allowed its ordinances to be relied upon as justification, and failed to issue any corrective or repudiative action disclaiming the unconstitutional conduct.

219.    By maintaining the enforcement action within its official municipal framework and permitting the prosecution to continue based on the approved report, the City affirmatively allowed the unconstitutional conduct to operate as lawful municipal action. This deliberate inaction, after notice, constitutes downstream municipal ratification under Praprotnik and reinforces that the challenged conduct represents municipal policy rather than isolated officer error.

220.    Ratification Contrary to the City's Own Definition of Risk

The City of Avon's codified ordinances define "risk" as a "significant possibility," as opposed to a remote or speculative one. See Avon Codified Ordinances, Chapter 606, § 606.01. Nevertheless, the City ratified enforcement action and prosecution based on an official police report that identified no articulable facts demonstrating any meaningful likelihood of harm. The City's decision to approve, maintain, and enforce the challenged conduct despite the absence of any qualifying "risk" further supports an inference of deliberate indifference and ratification of unconstitutional policing practices inconsistent with the City's own legal standards.

221.    Causation- The supervisory approval and subsequent municipal ratification were the moving force behind Plaintiff's injuries, including unlawful detention, deprivation of liberty, emotional distress, reputational harm, and prosecution unsupported by law. Plaintiff's injuries were directly and proximately caused by the City of Avon's ratification of unconstitutional conduct through both supervisory approval and downstream municipal inaction.

222.    Clarification Regarding Municipal Ratification:

Plaintiff does not allege that the City Council or Council Office directly supervised the officers or approved the initial stop, search, or detention. Rather, Plaintiff alleges that after supervisory approval converted the challenged conduct into official police action, the City—through its formal governance and record-custodial mechanisms—deliberately allowed that unconstitutional action to remain operative as municipal policy without

correction or repudiation. Sixth Circuit precedent recognizes that municipal ratification may occur where final policymakers, after notice, affirmatively approve or deliberately refuse to correct unconstitutional conduct that has been adopted as official municipal action. See Praprotnik, 485 U.S. at 127; Wright v. City of Euclid, No. 19-3452 (6th Cir. 2020). Plaintiff's allegations therefore challenge municipal policy and deliberate indifference, not respondent superior liability.

223. Municipal Liability Under Monell — Ratification, Deliberate Indifference, and Causation

Plaintiff plausibly alleges municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978), because the constitutional violations at issue were not isolated officer error, but flowed from the City of Avon's policies, customs, and deliberate choices by officials with final policymaking authority. Following the incident, supervisory personnel acting pursuant to the City's established personnel and policing policies reviewed, approved, and adopted Officer Zuk's official police report and associated enforcement actions as the City's own. That report, on its face, documented materially unconstitutional conduct, including the detention and frisk of Plaintiff absent reasonable suspicion, reliance on statutorily prohibited visual inspection to justify prosecution, and the misidentification of a non-present individual as a participating party.

224. These defects were apparent without further investigation and implicated clearly established constitutional and statutory limits on police authority. The City nevertheless took no corrective action, imposed no discipline, provided no remedial training, and allowed the prosecution to proceed on the basis of the approved report. Under City of St. Louis v. Praprotnik, 485 U.S. 112 (1988), such post-incident approval and inaction by final policymakers constitutes municipal ratification, converting the officers' conduct into official policy for purposes of § 1983.

225. The City's own Personnel Policy Manual and Police Officer Classification Specifications further establish that Avon affirmatively requires lawful investigations, accurate reporting, and constitutional compliance, yet failed to enforce those mandates despite notice of violations, supporting a reasonable inference of deliberate indifference under City of Canton v. Harris, 489 U.S. 378 (1989). Accepting the pleaded facts as true, the City's ratification and failure to train, supervise, discipline, or correct known misconduct were a moving force behind Plaintiff's unlawful seizure, unlawful search, fabrication of evidence, and continued prosecution, rendering municipal liability plausible and sufficient to proceed beyond the pleading stage under controlling Sixth Circuit precedent.

226.    J. Municipal Policy, Deliberate Indifference, and Causation

The City of Avon's official Police Officer Classification Specifications constitute formal municipal policy and expressly require officers to possess knowledge of state and local traffic laws, exercise sound judgment and discretion, conduct lawful investigations, prepare accurate reports, preserve evidence, and provide truthful testimony.

227.    Despite these mandated competencies, Defendant Zuk unlawfully re-initiated and prolonged Plaintiff's detention without reasonable suspicion, escalated a completed encounter into investigative and search-related activity, fabricated a traffic violation, misidentified Plaintiff on a citation, submitted false reports, and later presented substituted evidentiary materials at trial. These violations correspond directly to duties the City affirmatively required but failed to enforce, demonstrating inadequate training, supervision, and oversight.

228.    The City's failure to train, supervise, discipline, or audit officer compliance with these core responsibilities—particularly in high-discretion areas of traffic enforcement, evidence integrity, and court proceedings—reflects deliberate indifference to an obvious risk of constitutional violations. This failure was a moving force behind Plaintiff's unlawful seizure, unlawful search, fabrication of evidence, malicious prosecution, and denial of equal protection. Because the misconduct flowed predictably from the City's policies, customs, and omissions, Plaintiff plausibly alleges municipal liability under Monell v. Department of Social Services, City of Canton v. Harris, and controlling Sixth Circuit precedent, and dismissal under Rule 12(b)(6) is unwarranted.

229.    K. Municipal Ratification and Deliberate Indifference 2

Plaintiff plausibly alleges municipal liability under Monell based on the City of Avon's ratification of trial-stage fabrication and false testimony by Defendant Zuk.

230.    At Plaintiff's February 2025 trial, Officer Zuk swore under oath that the contents of her police report were true, despite the report identifying a nonexistent individual and asserting that Plaintiff exited the vehicle—facts conclusively disproven by contemporaneous video evidence. These were not minor inaccuracies or disputed perceptions; they were objectively false statements concerning material facts central to the prosecution.

231.    Where an officer knowingly advances false information in official reports and sworn testimony, her conduct is not objectively reasonable and cannot be shielded by any good-faith doctrine. See United States v. Krull, 480 U.S. 340, 349–50 (1987) (good-faith reliance depends on objective reasonableness and does not protect conduct premised on falsehoods).

232.   The City's failure to investigate, correct, or discipline this misconduct—despite
its occurrence in open court, its documentary footprint, and its contradiction by
video evidence—plausibly constitutes ratification by final policymakers and
deliberate indifference to constitutional violations. By allowing fabricated
evidence and false testimony to remain operative throughout the prosecution,
the City effectively approved the unconstitutional basis for Plaintiff's continued
seizure and prosecution, making municipal policy and inaction a moving force
behind Plaintiff's injuries under Monell.

233.   L. Systemic Documentation and Seizure Errors

The city is further liable under Monell for maintaining customs and practices that result
in unconstitutional seizures and materially inaccurate police documentation. Under
Brendlin v. California, 551 U.S. 249 (2007), all occupants of a vehicle are "seized"
during a traffic stop and therefore have standing to challenge the legality of that
seizure—making accurate identification of seized persons a constitutional necessity.

234.   Here, the officer not only issued a traffic citation but also prepared a police
report that affirmatively listed an individual—Michael Paul Hessler—who was not
present at the scene as a participating party, including personal identifiers such
as address, race, and physical descriptors. The inclusion of a non-present
individual as seized reflects more than clerical error; it evidences a systemic
failure in supervision, training, and recordkeeping that predictably leads to
unlawful seizures, false attribution of police contact, and deprivation of
constitutional rights.

235.   The City's tolerance of such inaccuracies in official reports and citations
demonstrates deliberate indifference to well-established Fourth Amendment
standards and supports a finding that Plaintiff's injuries were caused by
municipal customs or practices, rather than by an isolated act of an individual
officer.

236.   M. Municipal Liability Based on Failure to Train, Supervise, and Discipline

The City of Avon's official Police Officer Classification Specifications define the core
duties, required knowledge, and professional standards governing officer conduct.
These specifications constitute formal municipal policy and establish the baseline
constitutional competence the City affirmatively requires of its officers. Plaintiff plausibly
alleges that the constitutional violations at issue directly correspond to, and materially
depart from, these enumerated duties, supporting a claim that the City failed to

adequately train, supervise, and discipline its officers in violation of Monell v. Department of Social Services, 436 U.S. 658 (1978).

237.    N. Fourth Amendment — Unlawful Seizure and Prolonged Detention
Sixth Circuit precedent recognizes that unlawful seizures often culminate in fabrication when officers attempt to justify unconstitutional conduct after the fact. Jackson v. City of Cleveland, 925 F.3d 793, 820–21 (6th Cir. 2019); Mills v. Barnard, 869 F.3d 473, 485–86 (6th Cir. 2017); Sykes v. Anderson, 625 F.3d 294, 305–06 (6th Cir. 2010). The Classification Specifications require officers to possess knowledge of state and local traffic laws, familiarity with departmental policies and procedures, and the ability to exercise independent judgment in applying legal standards to specific situations. Plaintiff alleges that, notwithstanding these requirements, Officer Zuk misrepresented Ohio traffic law, fabricated a child-restraint violation, re-initiated and prolonged a detention without reasonable suspicion, and escalated an encounter after its lawful conclusion. Accepting these allegations as true, the complaint plausibly alleges that the City's failure to ensure training, supervision, and auditing for compliance with these defined legal competencies was a moving force behind Plaintiff's unlawful seizure, in violation of clearly established Fourth Amendment principles.

238.    O. Fourth Amendment — Unlawful Search and Investigatory Escalation

The Classification Specifications further require officers to conduct investigations consistent with legal standards, make constitutionally sound probable-cause determinations, and follow established law-enforcement procedures during investigative activity.

239.    Plaintiff alleges that Officer Zuk escalated a completed encounter into investigatory and search-related conduct without lawful justification, contrary to wellestablished federal and Ohio law governing stop termination and search escalation. See Florida V. Royer 460 U.S. 491(1983), Arizona v, Gant, 556 U.S. 332 (2009) State V. Hale 2024-Ohio-4866, and Snellings v. State,_N.E. 3d_(Ind. Ct App. 2024).

240 .The complaint plausibly alleges that the City's failure to train officers on these constitutional boundaries—despite explicitly requiring such judgment in its job descriptions—reflects deliberate indifference under City of Canton v. Harris, 489 U.S. 378 (1989).

241.    P. -Fourteenth Amendment — Fabrication of Evidence and Due Process Violations

The Classification Specifications mandate that officers prepare accurate reports, preserve evidentiary integrity, and present truthful information to prosecutors and courts. Plaintiff alleges that Officer Zuk violated these duties by fabricating factual observations, misidentifying Plaintiff on a citation, misstating material facts in official reports, and later presenting an electronic citation at trial that differed from the citation actually issued. The complaint plausibly alleges that the city failed to supervise, audit, or discipline violations of these core evidentiary obligations—particularly during prosecution and trial—thereby permitting fabricated evidence to remain operative and directly causing Plaintiff's continued seizure and prosecution.

242.    Q. -Fourteenth Amendment — Selective Enforcement and Equal Protection

The Classification Specifications require officers to enforce laws consistently, exercise sound judgment in discretionary enforcement, and adhere to professional standards. Plaintiff alleges that Officer Zuk selectively enforced a fabricated traffic violation against Plaintiff, an African-American male, while declining to investigate or cite a similarly situated white individual present at the scene. The complaint plausibly alleges that this departure from required professional judgment, combined with the absence of any raceneutral justification, supports an inference of discriminatory enforcement. The City's failure to enforce its own standards of professional discretion, together with prior notice of discriminatory enforcement risks, plausibly supports municipal causation and deliberate indifference with respect to the Equal Protection violation.

243.    R. -Malicious Prosecution and Continuing Seizure

The Classification Specifications expressly require officers to prepare credible documentation for prosecution and provide truthful testimony in court proceedings. Plaintiff alleges that the city permitted trial-stage fabrication and false evidentiary substitution to occur without investigation, correction, or discipline, thereby ratifying conduct that foreseeably prolonged Plaintiff's prosecution and deprivation of liberty.Violating clearly established law Napue v. Illinois, 360 U.S. 264(1959). These allegations plausibly establish municipal causation for Plaintiff's malicious-prosecution and continuing-seizure injuries.

244.    S. -Monell Causation

The City of Avon's own policies recognize that its officers exercise substantial discretionary authority in traffic enforcement, investigative decision-making, evidence handling, and courtroom testimony—areas that carry an obvious and recurring risk of constitutional injury if not properly controlled. Where, despite this acknowledged risk, a municipality fails to train, supervise, discipline, or audit officer compliance with

governing legal standards, resulting violations are not isolated departures but foreseeable consequences of municipal policy choices. Accepting the pleaded facts as true, Plaintiff plausibly alleges that the City's failure to enforce its own Police Officer Classification Specifications was a moving force behind the unlawful seizure, unlawful search, fabrication of evidence, selective enforcement, and continued prosecution at issue here, thereby stating a viable claim for municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978), City of Canton v. Harris, 489 U.S. 378 (1989), and controlling Sixth Circuit precedent.

245.    T. Failure to Train on Stop Termination and Search Escalation

The city further failed to train its officers on clear11ly established law governing stop termination and investigatory escalation. At the time of Plaintiff's encounter, it was settled that once the mission of a stop concludes, officers must allow a person to leave absent new reasonable suspicion. Rodriguez v. United States, 575 U.S. 348, 354–57 (2015). Ohio law likewise makes clear that seamless escalation from a completed encounter into further investigation renders any resulting search unlawful. State v. Robinette, 80 Ohio St. 3d 234, 241–42 (1997) (on remand); State v. Byrd, 2022-Ohio4631.

246.    Despite this settled law, the city failed to train officers to clearly terminate encounters, refrain from re-initiating contact without new suspicion, and avoid pretextual investigative expansion. Defendant Zuk's re-initiation of contact and escalation after the trespass investigation concluded was a predictable consequence of that failure, directly causing Plaintiff's unlawful seizure and search.

247.    U. Downstream Trial-Stage Fabrication/Municipal Ratification/Continued Seizure

The City's deliberate indifference extended beyond the street encounter. Plaintiff plausibly alleges that the City failed to supervise, audit, or control post-citation and trialstage conduct, enabling Defendant Zuk to present at trial an electronic citation different from the ticket actually issued, advance assertions contradicted by video evidence, and attempt to retrofit probable cause during judicial proceedings.

248.    The City of Avon is liable under Monell because Plaintiff plausibly alleges that final municipal policymakers ratified Defendant Zuk's trial-stage fabrication and continued constitutional violations.

249.    Avon's Police Officer Classification Specifications and departmental policies require officers to prepare accurate reports, preserve evidentiary integrity, and provide truthful testimony in court. Despite these mandatory duties, Defendant Zuk presented at Plaintiff's February 2025 trial an electronically filed citation different from the ticket issued at the scene, advanced factual assertions

contradicted by video evidence, and relied on this substituted evidence to justify Plaintiff's prosecution and continued seizure.

250.   These actions occurred in open court, were known or readily knowable to supervisory and command-level officials, and violated explicit departmental requirements governing documentation, evidence handling, and courtroom conduct.

251 .The City's failure to investigate, correct, discipline, or repudiate this trial-stage misconduct—despite its visibility, documentary trail, and constitutional significance—constitutes ratification by final policymakers and deliberate indifference to Plaintiff's rights. By allowing fabricated evidence to remain operative throughout the prosecution and taking no corrective action after the misconduct was revealed, the city affirmatively approved the unconstitutional basis for Plaintiff's continued seizure and prosecution.

252.   This ratification was a moving force behind Plaintiff's ongoing deprivation of liberty from citation through dismissal, establishing municipal liability under Monell v. Department of Social Services, City of Canton v. Harris, and controlling Sixth Circuit precedent recognizing liability where post-incident approval or inaction by policymakers transforms officer misconduct into official municipal policy.

253.   V. Failure to Investigate and Ratification of Discrimination

Following the incident, Plaintiff's white companion repeatedly attempted to file a racialbias complaint with APD and Internal Affairs through in-person delivery, emails, and mailed correspondence. The complaint was rejected or ignored. The City's refusal to accept or investigate credible allegations of racial discrimination reflects a municipal custom of deliberate indifference and ratification, emboldening discriminatory enforcement and directly causing Plaintiff's injuries.

254.   Plaintiff plausibly alleges that the City's policies, customs, and omissions were the moving force behind his injuries. Defendant Zuk's racially selective enforcement, unlawful detention, fabricated citation, and trial-stage misconduct were not isolated acts, but foreseeable results of the City's failure to train, supervise, discipline, and correct known constitutional violations. Monell, 436 U.S. at 694; Wright, supra.

255.   W. Sufficiency at the Pleading Stage

Plaintiff's allegations are detailed, non-conclusory, and tethered to specific constitutional violations, prior notice, and identifiable municipal failures.

256. As in Wright, Buehner v. City of Cleveland (2025), and Crable v. City of Cleveland (2024), such factual specificity is sufficient to plausibly allege municipal liability and proceed to discovery. Dismissal under Rule 12(b)(6) is therefore unwarranted.

257. Under clearly established law, including City of Canton v. Harris, 489 U.S. 378 (1989), and Wright v. City of Euclid, the City of Avon is liable for these constitutional violations.

WHEREFORE

Plaintiff seeks compensatory damages, attorney's fees under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

Richard Heung                01/08/26

440-434-0214